**E-FILED**
Friday, 28 July, 2006  03:30:14 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ERIC D. SIMPLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  04-1305 |
| | ) | |
| WALGREEN CO., an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM OF LAW

COMES NOW the defendant, WALGREEN CO. ("Walgreens"), an Illinois Corporation, by and through its attorneys, HINSHAW & CULBERTSON LLP, and for its Motion for Summary Judgment and Supporting Memorandum of Law, states as follows:

## I.      INTRODUCTION

The plaintiff, Eric D. Simple, has been a Walgreens employee since 1995.  In 1999, Simple was promoted to Executive Assistant Manager ("EXA"), the position immediately below the store manager's position.  From 1999 until 2004 Simple served as an EXA in various Walgreen stores in Bloomington-Normal, Illinois.  In October 2003 the store manager's position at the Pontiac, Illinois, Walgreens store became open.  Walgreens selected a white female EXA, Melissa Jonland, to the position instead of Simple.  Simple, an African-American, contends that remarks of his supervisor show Walgreens wrongfully discriminated against him because of his race and that he was better qualified for the Pontiac position than Jonland.  In April 2004 Walgreens offered Simple a store manager's position in Peoria, which he declined.  After filing a charge of discrimination with the Equal Employment Opportunity Commission and receiving a right to sue letter, Simple filed the present suit on September 2, 2004, alleging that Walgreens

engaged in unlawful employment discrimination against him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

Walgreens is entitled to summary judgment on the issue of liability. The remark of his supervisor, a non-decisionmaker, was unrelated to Walgreens' awarding the Pontiac job to Jonland. Furthermore, Walgreens had a legitimate, non-discriminatory reason for selecting Jonland over Simple – it believed she was the better qualified candidate for the position. Assuming *arguendo* that Walgreens is not entitled to summary judgment on liability, it is entitled to summary judgment denying any back pay award for the period after April 30, 2004, as on that date Walgreens offered Simple the store manager's position for the store in Peoria, a position that was substantially equivalent to the Pontiac job.

## II.    UNDISPUTED MATERIAL FACTS

1.    The plaintiff has been an employee of Walgreens since April 1995. Complaint, para. 8.

2.    The plaintiff was employed as an EXA from April 1999 to 2004 in various stores in Bloomington-Normal. Eric Simple Deposition, pp. 15-22. [1]

3.    EXA is a salaried position that receives a bonus based on the performance of the store and allows for promotion to store manager. Leanne Turley Deposition, p. 8.

4.    There is no written policy regarding the process by which an EXA is promoted to store manager. Turley Dep., p. 9.

5.    Michael Palmer, the district manager for Walgreens' "Illinois North" District, comprised of 28 stores, including those in Peoria, Bloomington, Kankakee and Pontiac, is the individual responsible for selecting store managers from both the ranks of EXAs and existing

---

[1] Copies of the cited depositions, affidavit and other exhibits are attached.

80219382v1 846495

store managers in his district.   Michael Palmer Deposition, pp. 6-8, 66; Michael Palmer Affidavit, paras. 1, 3.

6.    Although his decision is subject to the approval of his supervisors, the district manager has complete discretion in hiring store managers, and other store managers have no input.  Palmer Dep., pp. 7-9, 32.

7.    Palmer makes a subjective decision in filling store manager positions, and does not consider written documentation or the performance evaluations of EXAs done by store managers unless he is uncertain of his choice.  Palmer Dep., pp. 39-40, 54-55, 109.

8.    The plaintiff has a bachelor's degree in speech communications.  Simple Dep., p. 5.

9.    Having an undergraduate degree is not determinative of whether an EXA will be promoted to store manager.  Palmer Dep., p. 40.

10.    Typically, Walgreens assigns new store managers promoted from the ranks of EXAs to stores in the bottom one-third tier in terms of volume and profitability, in order to enable the new store manager to gain proficiency in his or her skills in a less pressurized environment and to minimize the possible loss to profits should the new manager not succeed. Palmer Dep., p. 42; Palmer Aff., para. 4.  If they perform well, they have the opportunity to become a manager at a higher profit store.  Palmer Aff., para. 16.

11.    The store in Pontiac, Illinois, was in the bottom quarter in profitability for stores in the district in 2003.  Palmer Dep., p. 66; Palmer Aff., para. 5.

12.    Palmer does not use racial demographic data for Walgreens stores in the selection process for store managers.  Palmer Dep., p. 48.

80219382v1 846495

13.    Palmer did not refer to performance evaluations in selecting Melissa Jonland for the Pontiac store manager position in October, 2003, because he "was solid on Ms. Jonland as the candidate for that store."  Palmer Dep., p. 119.

14.    When Palmer selected Jonland for the Pontiac job, Leanne Turley, the store manager who was the plaintiff's supervisor in Bloomington at the time, was not consulted by Palmer or anyone else.  Turley Dep., p. 22.

15.    Turley's first conversation with Palmer about the store manager vacancy in Pontiac occurred after Palmer had already selected Jonland.  Turley Dep., p. 54.

16.    The plaintiff has no knowledge of any communications between Palmer and Turley regarding his qualifications for the Pontiac job.  Simple Dep., pp. 86-87.

17.    Turley made a comment to the plaintiff in October, 2003, after the decision had already been made to promote Jonland to the store manager position in Pontiac, "something to the effect of the fact that Eric was not promoted to Pontiac and that the person that was promoted was probably a better fit for the store and that Pontiac was perhaps not ready to have a black store manager."  Turley Dep., pp. 52-53.

18.    Turley only made this comment to the plaintiff because her opinion is that Pontiac is more of a racist town, and because she was trying to make an upset employee feel better by telling him that he probably would not have been happy in Pontiac anyway.  Turley Dep., pp. 56, 65.

19.    The plaintiff testified that in October, 2003, Turley told him that Jonland was being promoted to store manager in Pontiac, and said that it was not that he was not ready, but that Pontiac was not ready for him, and as a black male he would surely fail in that store, and that

4

Walgreens was doing him a favor because he would only get one shot at being a store manager. Simple Dep., p. 68-69.

20.    The plaintiff entered an overnight manager position with Turley as his supervisor in December 2004, and had no reservations about working for her again because of her October 2003 comment.  Simple Dep., p. 184.

21.    Following Turley's comment to the plaintiff, Palmer orally reprimanded her, and informed her that any similar conduct in the future could result in further disciplinary action, including written discipline and termination of employment.   Palmer Dep., p. 25-26; Turley Dep., p. 78.

22.    Neither race nor Pontiac's "readiness" for a black store manager, as expressed by Turley, played any part in Palmer's decision regarding the Pontiac store manager position. Palmer Dep., pp. 96-98.

23.    Turley actually viewed the plaintiff as "promoteable," and gave him an exceptional/above average performance evaluation, the second-to-top rating.  Turley Dep., pp. 36, 40.

24.    Palmer interviewed only Melissa Jonland for the Pontiac store manager position, and offered her the job during that interview.  Palmer Dep., p. 97; Palmer Aff., para. 10.

25.    Jonland did not solicit the Pontiac store manager job before the interview. Melissa Jonland Deposition, p. 36.

26.    The plaintiff had no knowledge of the opening in Pontiac until Turley told him he had not gotten it after the decision had been made.  Simple Dep., p. 70.

27.    No notification was given to Walgreens employees that the store manager position in Pontiac was becoming available before it was filled.  Turley Dep., pp. 22-23.

80219382v1 846495

28.    Palmer did not solicit applications or conduct other interviews for the Pontiac job because it was an existing opening in an ongoing store that had to be filled reasonably soon, and Palmer was familiar with the qualifications of the EXAs in the district.  Palmer Aff., para. 10.

29.    The first store manager in Pontiac, a Vietnamese male, Tuan Nguyen, hired by Palmer, left in January, 2001, and the second manager was demoted in October 2003, because of his violation of company policy.  Palmer Aff., para. 5.

30.    Palmer decided that EXA Melissa Jonland possessed the qualities required by the situation in the Pontiac store: employee morale was low, investment management was weak, and store condition and staff productivity had declined.  Palmer Aff., paras. 5-6.

31.    Jonland was chosen for the Pontiac job because her performance as an EXA had demonstrated that she had strong and consistent performance in her personal productivity, good communication skills, kept to the task at hand, and had good attention to detail.  Palmer Aff., para. 6.

32.    Jonland had also had demonstrated strength in investment management in the two stores where she worked, and better performance in investment management than the plaintiff, who had preceded her as EXA at the 1110 Main Street store in Bloomington.  Palmer Aff., para. 7.

33.    Jonland had been with the company longer than the plaintiff (since 1994), had three years of college, and had herself been either an assistant manager or EXA for four years (an EXA since 2001) before being promoted to manage the Pontiac store.  Jonland Dep., pp. 5-8, 21, 30-31.

34.    At the time Palmer selected Jonland for the Pontiac position in October, 2003, three other EXAs besides the plaintiff had more seniority than Jonland.  Palmer Aff., para. 9.

80219382v1 846495

35.    The normal time spent as an EXA was a little over two years.  Simple Dep., p. 13.

36.    Palmer offered the plaintiff the opportunity to become a store manager multiple times.  Palmer Dep., p. 29.

37.    In November 2001, when the plaintiff had been an EXA for two and a half years, Palmer offered the plaintiff the store manager position in the Walgreens store in Kankakee, Illinois.  Palmer Dep., p. 28; Simple Dep., p. 31.

38.    The Kankakee store's sales and profitability were comparable to, and may have been higher than, those of the Pontiac store.  Palmer Dep., p. 93.

39.    The plaintiff declined the Kankakee position, even though it would have been a $7,000 increase in salary, because he would lose his wife's salary, he did not want to relocate, and he believed the store was in an African-American, socioeconomically-challenged neighborhood.  Simple Dep., pp. 10, 32-36.

40.    In November 2002, Palmer offered the plaintiff the store manager position in the Walgreens store at 600 South Western Avenue in Peoria, Illinois.  Palmer Dep., pp. 28-29.

41.    Palmer also offered the plaintiff relocation consideration (moving expenses) to assist him if he wished to move his home from the Bloomington-Normal area to the Peoria area.  Palmer Dep., pp. 29-30.

42.    In December 2002, Palmer offered the plaintiff the store manager position in the Walgreens store on Main Street in Peoria, Illinois.  Palmer Dep., p. 31.

43.    As part of the December 2002 offer of the Main Street store manager position, Palmer again offered the plaintiff relocation consideration if he wished to move his home to Peoria.  Palmer Dep., p. 31.

80219382v1 846495

44.    Turley asked the plaintiff in November 2003, if he was interested in the Court Street store in Kankakee, but he told her that he was not. Simple Dep., p. 56.

45.    On April 30, 2004, Palmer offered the plaintiff a position as store manager in the Walgreens store at 600 South Western Avenue in Peoria, Illinois. The plaintiff turned down this position. Palmer Dep., pp. 76-77.

46.    The plaintiff turned down the Peoria job because of the manner in which Palmer offered the job, the distance of the commute, the location of the store in an African-American neighborhood, and the fact that the store would be closing in 16 months and merging with another store. Simple Dep., pp. 45-47.

47.    In April 2004, Palmer also asked the plaintiff if he was interested in applying for the manager's position at the Plainfield store, outside of the Illinois North District, but the plaintiff was not interested because the position would have required him to relocate. Simple Dep., pp. 58-62.

48.    In October 2004, Palmer advised the plaintiff that he was considering EXA candidates for promotion to store manager at 1700 E. Court St. in Kankakee, Illinois, and asked if he was interested in interviewing for the position and willing to relocate to Kankakee. Palmer Dep., pp. 106-08; Palmer Dep. Ex. 13.

49.    The plaintiff responded to Palmer's October 2004 communication by informing Palmer that he was not willing to relocate to Kankakee, and "not interested in being a store manager at this point in my career." Palmer Dep. Ex. 13; Simple Dep., pp. 173-74.

50.    Store managers are paid a base salary and a bonus that is based on the store's profitability. In 2002, the Pontiac store manager preceding Jonland had a base salary of $45,500 per year, which was increased in 2003 to $49,200. Palmer Aff., para. 11.

80219382v1 846495

51.    Jonland's base starting salary as store manager in Pontiac was $46,500, which increased to $49,800 in 2004.  Palmer Aff., para. 12.

52.    The Walgreens store at 600 South Western Avenue in Peoria was closed on August 18, 2005, when it was consolidated with the Main Street store in Peoria to form a new store on Western Avenue in Peoria.  Palmer Aff., para. 13.

53.    In 2002, the Western Avenue store had two managers: the first manager's salary was $46,500 per year, and the second manager's was $45,120, increasing to $46,920 in 2003 and $49,920 in 2004.  Palmer Aff., para. 13.

54.    In May 2002, the Pontiac and Western Avenue store managers each received bonuses of $7,200; in 2003, the Pontiac store manager received a bonus of $15,650, and the two store managers at the Western Avenue store received a total of $8,538 in bonuses.  In 2004, the Western Avenue store managers received a total of $12,250 in bonuses, while the Pontiac store manager received a total of $14,157 for her bonus.  Palmer Aff., para. 14.

55.    Had the plaintiff accepted the Western Avenue store manager's position on April 30, 2004, his base salary would have been $46,500, and the responsibilities, status, promotional opportunities, and working conditions of the store manager's position at the Western Avenue store were the same as those at the Pontiac store.  Palmer Aff., para. 15.

56.    After the Western Avenue store closed in August 2005, its manager became the manager at the 4818 N. Sheridan store in Peoria, a higher profit store, in keeping with the typical process in which an EXA starts at a lower profit store, and, based on his or her performance, has the opportunity to become a manager at a higher profit store.  Palmer Dep., p. 42, Palmer Aff., para. 16.

80219382v1 846495

57.     In April 2004, the plaintiff was only interested in store manager positions at the five stores in the Bloomington-Normal area, or any store in Peoria that "would have been driveable."  Simple Dep., pp. 62-63.

58.     The Illinois North District covers 28 stores spread over a large geographic area, which includes Kankakee, Pontiac, Bloomington, Peoria, Pekin, Macomb, Canton, and Galesburg, and of these stores EXAs are only eligible to promotion to the lower profit stores. Palmer Dep., p. 42; Palmer Aff. para. 4.  For instance, the Knoxville store in Peoria has had two new managers between 2001 and 2005, but the plaintiff, an EXA, could not be considered for these openings, because the Knoxville store is a higher profit store that is a second-jump promotion for individuals who are already store managers.  Palmer Dep., pp. 87-89.

59.     As of the summer of 2004, the plaintiff decided that he no longer wanted to be considered for employment as a store manager, that he no longer had the drive or desire to be a store manager, and that it would not be fair to Walgreens for him to take such a position.  Simple Dep., pp. 167-68, 170.

60.     The plaintiff filed a Charge of Discrimination with the EEOC on February 12, 2004.  Complaint, para. 5.

61.     The distance between the plaintiff's home and the Walgreens store at 600 South Western Avenue, Peoria, was 48 miles and the driving time was 55 minutes.  The distance and driving time from his residence to the Pontiac store were 36 miles and 43 minutes. www.randmcnally.com.

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when there is

80219382v1 846495

sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). While the record and all reasonable inferences drawn from it are to be viewed in the light most favorable to the nonmovant, he must show more than some metaphysical doubt regarding the facts in order to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Bisciglia v. Kenosha Unified School Dist. No. 1,* 45 F.3d 223, 226 (7th Cir. 1995). If the non-movant fails to establish the existence of any element essential to his case, summary judgment must be granted to the moving party. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir. 1996).

## IV.    ARGUMENT

### Walgreens Is Entitled To Summary Judgment On The Issue Of Liability

Simple contends that he was wrongfully denied promotion to the position of store manager for Walgreens' Pontiac store because of his race. Complaint, para. 12. Simple bases his claim on two grounds: First, he alleges that the remarks of Leanne Turley, manager of the Walgreens store where Simple then worked, directly evidence Walgreens' racial motivation in failing to promote him. Shortly after she learned that Simple would not be promoted to the Pontiac store, Turley told Simple that the district manager had promoted Melissa Jonland to the job instead, and that Pontiac was "not ready" for a black store manager. Simple Dep, p. 69, cited *supra* at the defendant's statement of undisputed material facts ("SUMF") 19. Secondly, Simple claims that he was wrongfully denied a promotion as he was better qualified than Jonland at the time she was awarded the Pontiac store manager's position.

11

80219382v1 846495

**Turley's Remarks Were Not Those Of The Decisionmaker**

        Simple suggests that the statement of Leanne Turley to him in October 2003, informing

him that he would not be promoted to the store manager's position in Pontiac is direct evidence

of Walgreens' racist motive.  Although there is great disagreement between the parties as to the

significance of Turley's statement, there is little dispute as to its content.  According to Turley,

she told Simple "[s]omething to the effect of the fact that Eric was not promoted to Pontiac and

that the person that was promoted was probably a better fit for the store and that Pontiac was

perhaps not ready to have a black store manager."  Turley Dep, p. 52, SUMF 17.  Turley made

the statement after the promotion decision had been made by Palmer, and did so in an effort to

ease  Simple's  disappointment,  she  said.    *Id*.  at  52-56,  SUMF  17,  18.    Turley  was  later

reprimanded by Walgreens for making the statement, and informed that a subsequent similar

incident could result in discipline, including termination.  *Id*. at 78, SUMF 21.

        Simple's recollection of the statement is similar:

    Q.      …How did you become aware - - or when did you first
            become  aware  of  the  store  manager's  position  at  the
            Pontiac store?

    A.      October 2nd, Wednesday, it was my day off.  Miss Turley
            called me in the office and told me that the Pontiac store
            was being - - is open, but unfortunately you're not going to
            get it.  Mr. Palmer is going to go with Miss Jonland.

    Q.      Miss Jonland, you said?  Melissa Jonland?

    A.      Miss Jonland.  And it's not that you're not ready for the
            Pontiac store; it's that Pontiac is not ready for you because,
            as a black male, you will surely fail in that store.  Sales
            would suffer.

            And I said, I can't believe this, Miss Turley, that Walgreens
            would make a decision based on that.

            And she said, Yes.  And she said, Unfortunately, it's true,
            but actually, Mr. Palmer, Walgreens is doing you a favor

12

because with Walgreens you only get one shot, one opportunity.

Simple Dep, pp. 68-69, SUMF 19.

Whether Turley's comments reflect racism on her part or merely a misguided effort to cushion Simple's disappointment is debatable.[2] What is clear is that her comments were not those of the decisionmaker for the Pontiac store position, District Manager Michael Palmer. The selection of store managers from the ranks of EXAs in the Illinois North District, comprised of 28 stores, including those in Peoria, Bloomington and Pontiac, was done solely by Palmer. Palmer Dep., pp. 6-8, 66, SUMF 5. Although Palmer's decision is subject to the approval of his immediate supervisor, the Operations Senior Vice President, store managers, such as Turley, had no input into the decision to promote an EXA to store manager. *Id*. at 7-9, SUMF 6. Palmer never consulted with Turley before making the decision to promote Jonland. Turley Dep., pp. 22, 54, SUMF 14, 15. Pontiac's "readiness" for a black store manager, as expressed by Turley, played no part in Palmer's decision. Palmer Dep. p. 96, SUMF 22. Simple himself admitted that he had no knowledge of any communication between Turley and Palmer regarding Simple's qualifications for the Pontiac job. Simple Dep., pp. 86-87, SUMF 16. Jonland was the only candidate for the position interviewed by Palmer. Palmer Dep., p. 97, SUMF 24.

The stray remarks of non-decisionmakers are not evidence that the promotion had a discriminatory motive. *Crabtree v. National Steel Corp.*, 261 F.3d 715, 723 (7th Cir. 2001); *Mlynczak v. Bodman*, 442 F.3d 1050, 1057-58 (7th Cir. 2006); *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005). This conclusion is not altered by Turley's status as Simple's direct supervisor during the time the Pontiac position was filled. This same

---

[2]  Interestingly, Simple requested to be transferred from another store back to Turley's store in December 2004, where she would be his supervisor. Simple Dep., pp. 184-85, SUMF 20. This suggests Simple did not believe her to be racist.

80219382v1 846495

circumstance existed in *Rozskowiak*:  There, the alleged discriminatory remarks were made by the plaintiff's supervisors who provided information which was considered by the decision makers.  Nonetheless, the court held that such comments were too far removed from the decision making process to constitute evidence of discrimination.  Similarly, in *Mlynczak*, the alleged discriminatory comments were made by the manager of the plaintiff's office.  Because the manager was not one of the decisionmakers, her comments failed to prove that the office had discriminated against the plaintiff.

Against this precedential backdrop, Turley's status as the author of Simple's job performance review also fails to provide any support to his argument.  Palmer stated that he generally does not look at performance evaluations of EXAs in filling store managers' positions, and did not in this instance.  Palmer Dep., p. 40, SUMF 7; Palmer Dep., p. 119, SUMF 13.  *See Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096 (7th Cir. 2001) (must be causal connection between sexist remark and employment decision).  Even had Palmer considered any input from Turley before the decision, Turley's view was that the plaintiff was "promoteable," and her evaluations of the plaintiff rated his overall performance as "exceptional."  Turley Dep., pp. 36, 40, SUMF 23.  Simple fails to identify anything in any evaluations done by Turley that are unfair or inaccurate.

## Walgreens Had A Legitimate, Non-Discriminatory Reason For Selecting Jonland Over Simple

Simple fares no better under the indirect method of proving discrimination set forth by *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  Under this approach, a plaintiff must show that:  (1) he was a member of a protected class; (2) he was qualified for an open position for which he applied; (3) his application for the position was rejected; and (4) the defendant filled the position with someone not of the plaintiff's protected class.  *Blise v. Antaramian*, 409

14

F.3d 861, 866 (7th Cir. 2005). Although Walgreens does not dispute that Simple has made out a *prima facia* case, this does not entitle him the opportunity to present his case to a jury. So long as Walgreens had a "legitimate, non-discriminatory reason" for its promotional decision, and the plaintiff cannot show that this reason was pretextual (*i.e.*, phony), the plaintiff cannot prevail. *Id.* at 867. Jonland had the skill set that in District Manager Palmer's opinion was most needed for the success of the Pontiac store. See Palmer Aff., paras. 5-6, SUMF 29-31. The prior store manager had been removed because of a violation of company policy, and in Palmer's view employee morale was low, the store condition had deteriorated, and profit controls and staff productivity had declined. Palmer decided that Jonland's consistent past performance, productivity, urgency to task, and attention to detail made her the top candidate and the only one he interviewed. *Id.* Based on her performance at the two stores where Jonland had been an EXA, Simple concluded that she was stronger in investment management, which is the maintenance of optimum inventory levels in relation to sales. *Id.*, para. 7, SUMF 32. Whether Palmer's decision was correct is irrelevant. *Mosley v. Maytag Corp.*, 2006 WL 213950 (C.D. Ill. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). It only matters that it be sincerely held, and no evidence in this case is to the contrary.

Simple also suggests that Walgreens is guilty of unlawful discrimination because he was better qualified than Jonland for the Pontiac manager's job, pointing out that he had a college degree (Jonland did not) and more managerial experience than Jonland. Plaintiff's Answers to Interrogatories, No. 7. Simple had been an EXA since 1999; Jonland since 2001. Simple Dep, p. 15, SUMF 2; Jonland Dep., p. 21, SUMF 33. A plaintiff basing his discrimination claim on his allegedly superior qualifications faces an uphill battle. The plaintiff must show that his credentials were "so superior to the credentials of the person selected for the job that *no*

80219382v1 846495

*reasonable person*, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook*, 280 F.3d at 1180-81 (internal quotation marks deleted, italics added).

Comparing the experiences and educational backgrounds for the two candidates does not establish that Simple possessed such overwhelmingly superior qualifications that no reasonable person could have selected Jonland for the position in Pontiac. Simple's bachelor's degree was in speech communication, Simple Dep., p. 5, SUMF 8, which seems only marginally related to the duties of a store manager. Hiring an applicant with the lesser educational achievement is not evidence of discriminatory motive. *See, e.g., Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 246 (10th Cir. 1993). Palmer has testified that having an undergraduate degree is not a factor in the decision to promote an EXA to store manager. Palmer Dep., p. 40, SUMF 9. And while Simple may have been an EXA longer, Jonland had been with the company longer (since 1994), had three years of college (albeit no degree), and had herself been either an assistant manager or EXA for four years before being promoted to manage the Pontiac store. Jonland Dep, pp. 5-8, 30-31, SUMF 33.[3] Simple's greater tenure as an EXA does not necessarily enhance his qualifications. The normal time spent as an EXA was about two years. Simple Dep., p. 13, SUMF 35. Simple himself had been first offered a store manager's job in Kankakee in 2001, after he had served about two and a half years as an EXA. *Id.*, p. 31, SUMF 37. He declined because his wife would have to give up her job with State Farm Insurance and because the store

---

[3] In the depositions in this case Simple's counsel inquired extensively into an incident in 2000 in which Jonland allegedly called a fellow employee a "fucking foreign bitch" in a workplace argument. Jonland Dep., p. 11. Jonland denied that she used the term "foreign bitch." *Id.*, p. 12. She acknowledged getting into a heated argument and using profanity, for which she was reprimanded by Walgreens after an investigation. *Id.*, p. 17. How any of this connects to Jonland's fitness for the Pontiac store manager's position is baffling. There is no evidence in the record proving that Jonland uttered any discriminatory epithet. Even if "foreign" were used, it falls far short of constituting actionable harassment. *See Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000) (use of word "bitch" arising from work-related altercation is not actionable under

16

was in a low-income area.  *Id.*, pp. 32, 10, 36, SUMF 39.  This comparison of qualifications hardly shows the balance so tipped in Simple's favor that Walgreens' selection of Jonland was "inherently indicative of discrimination."  *See Holcolm v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).

Finding that Jonland was better qualified would place the court in the position of a "super personnel department," a role it has consistently declined.  *See, e.g., Mosley, supra*, at * 8. Although Palmer's decision was entirely subjective, Palmer Dep, p. 40, SUMF 7, Title VII does not ban the use of subjective criteria in hiring decisions.  *Millbrook*, 280 F.3d at 1176; *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 814 (7th Cir. 2005).  The fact that an employer's decision was based on subjective factors does not render a decision illegitimate.  *Id.*

**Assuming That Walgreens Does Not Receive Summary Judgment As To Liability, It Is Still Entitled To Summary Judgment On The Issues Of Back Pay and Front Pay After Simple Rejected A Store Manager's Job In Peoria And Later Decided He No Longer Wished To Be Considered For Any Store Manager's Position**

On April 30, 2004, Palmer offered Simple the store manager's position for the store at 600 South Western Avenue, Peoria.  Simple Dep., pp. 43-44, SUMF 45.  Simple declined the offer because he did not like the manner in which it was offered, including Palmer's demeanor. *Id*. at 45-46, SUMF 46.  He also thought he was being targeted for stores in neighborhoods that were predominantly African-American.  *Id*.  He was further troubled by the commuting distance and the fact that the store was slated to be merged with another store.[4]

An employer's offer of a job substantially equivalent to the job the Title VII plaintiff was denied tolls the accrual of back pay liability.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232

---

Title VII).

[4]  The store closed in August 2005 and was merged with another store into a new, larger store on Western Avenue.  Palmer Aff., para. 13, Palmer Dep., p. 36, SUMF 52.  The store manager from the "old" Western Avenue store went on to a higher-profit store in Peoria, as is typical for a new store manager who has performed well.  Palmer Aff., para. 16, SUMF 56.

80219382v1 846495

(1982).  A job is considered "substantially equivalent" if it affords the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.  *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983). Walgreens is therefore entitled to summary judgment on the issue of back pay.  *See* Fed. R. Civ. P. 56(d) (summary judgment allowed on issue of damages).  *See also, e.g., Henderson v. Hovnanian Enterprises, Inc.*, 884 F.Supp. 499 (S.D. Fla. 1995) (partial summary judgment granted on damages issues).

The store manager's position at the Western Avenue store was substantially equivalent to the Pontiac store manager's position.  Both had the same job responsibilities and promotional opportunities.  See Palmer Aff., para. 15, SUMF 55.  Compensation is slightly more difficult to assess.  Store managers are paid a base salary and a bonus that is based on the store's profitability.  *Id*., para. 11, SUMF 50.  In 2002 the Pontiac store manager preceding Jonland had a base salary of $46,500, which was increased to $49,200 in 2003.  *Id.*.  Jonland started at a base salary of $46,500 in October 2003.  *Id.*  para. 12, SUMF 52.  In comparison, the Western Avenue store manager was paid $46,500 in base salary in 2002.  *Id*., para. 13, SUMF 53, .  His successor in 2002 received a base salary of $45,120, which was increased to $46,920 in 2003 and 2004.  *Id*. In May 2002, the Pontiac and Western Avenue store managers received identical bonuses of $7,200.  *Id*., para. 14, SUMF 54.  In 2003 the Pontiac store manager received a bonus of $15,650 and the two store managers at the Western Avenue store received a total of $8,538 in bonuses. *Id.*.  In 2004 the Western Avenue store managers received a total of $12,250 in bonuses and the Pontiac store manager (Jonland) received a total of $14,157 in bonus.  *Id*.

Nor should the distance of the Western Avenue store from Simple's home in Bloomington render the job of managing that store "unequivalent" to the Pontiac store position.

18

According to www.randmcnally.com, the distance from Simple's residence to the Western Avenue store was 48 miles with a driving time of 55 minutes, while the distance to the Pontiac store is 36 miles with a driving distance of 43 minutes, a difference of 12 minutes. SUMF 61.[5] Surely, this cannot be a legitimate basis for rejecting the position.

Even if the Pontiac and Western Avenue store managers' positions were not substantially equivalent, Simple would still be foreclosed from any further damages after the summer of 2004. At that time he decided that he no longer wished to be a store manager. Simple Dep., p. 170, SUMF 59. He stated in his deposition that he lacked the desire to put forth the necessary effort. *Id.* at 167-68, SUMF 59. In October 2004 he also declined to be considered for a store manager's position in Kankakee. *Id.* at 174, SUMF 49.

In a similar vein, Simple is also foreclosed from receiving front pay. Front pay is the functional equivalent of reinstatement, awarded when that remedy cannot be granted because of the unavailability of the position sought or because employer-employee hostility makes reinstatement impossible. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998). In 2004 Simple voluntarily removed himself from consideration for a store manager's position both by his own lack of interest and by seeking reassignment to an overnight management position. Electing to no longer pursue the position a plaintiff claims was discriminatorily denied forecloses a front pay award. *See Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 112 (5th Cir. 1988).

---

[5] The court may take judicial notice of the distance between geographical locations. *See Duetch v. United States*, 367 U.S. 456, 470 (1961).

80219382v1 846495

## V.    CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment on the issue of liability should be granted, or alternatively, the court should enter judgment that the defendant is not entitled to monetary damages for lost wages or benefits after April 30, 2004.

WALGREEN CO., an Illinois Corporation, Defendant

By: HINSHAW & CULBERTSON LLP

 s/L. Lee Smith
L. Lee Smith (Lead Attorney)
Garth C.K. Madison
One of Its Attorneys
HINSHAW & CULBERTSON LLP
456 Fulton St., Suite 298
Peoria, IL  61602
309-674-1025

80219382v1 846495

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **July 28, 2006**, I electronically filed this **MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Nile J. Williamson
Attorney at Law
411 Hamilton Blvd., Suite 1926
Peoria, IL  61602

 s/L. Lee Smith
Attorneys for Defendant
L. Lee Smith
HINSHAW & CULBERTSON LLP
456 Fulton St., Suite 298
Peoria, IL  61602
309-674-1025

21

80219382v1 846495