IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC D. SIMPLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-1305 |
| ) | |
| WALGREEN CO., an ) | |
| Illinois Corporation, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE TO ALLEGEDLY UNDISPUTED MATERIAL FACTS

**(1.) UNDISPUTED MATERIAL FACTS[1]**

1. The plaintiff has been an employee of Walgreen's since April, 1995. Complaint, para. 8.

    **Admit.**

2. The plaintiff was employed as an EXA from April, 1999 to 2004 in various stores in Bloomington-Normal. Eric Simple Deposition, pp. 15-22.

    **Admit.**

3. EXA is a salaried position that receives a bonus based on the performance of the store and allows for promotion to store manager. Leanne Turley Deposition, p. 8.

    **Admit.**

4. There is no written policy regarding the process by which an EXA is promoted to store manager. Turley Dep., p. 9.

    **Admit.**

---

[1] All documents and exhibits referenced are attached to the appendix.

5. Michael Palmer, the district manager for Walgreen's "Illinois North" District, comprised of 28 stores, including those in Peoria, Bloomington, Kankakee and Pontiac, is the individual responsible for selecting store managers from both the ranks of EXAs and existing store managers in his district. Michael Palmer Deposition, pp. 6-8; Michael Palmer Affidavit, paras. 1, 3.

**Admit.**

8. The plaintiff has a bachelor's degree in speech communications. Simple, Dep. p. 5.

**Admit.**

9. Having an undergraduate degree is not determinative of whether an EXA will be promoted to store manager. Palmer Dep., p. 40.

**Admit.**

11. The store in Pontiac, Illinois, was in the bottom quarter in profitability for stores in the district in 2003. Palmer Dep., p. 66; Palmer Aff., para. 5.

**Admit.**

15. Turley's first conversation with Palmer about the store manager vacancy in Pontiac occurred after Palmer had already selected Jonland. Turley Dep., p. 54.

**Admit.**

16. The plaintiff has no knowledge of any communications between Palmer and Turley regarding his qualifications for the Pontiac job. Simple Dep., pp. 86-87.

**Admit.**

17. Turley made a comment to the plaintiff in October, 2003, after the decision had already been made to promote Jonland to the store manager position in Pontiac,

"something to the effect of the fact that Eric was not promoted to Pontiac and that the person that was promoted was probably a better fit for the store and that Pontiac was perhaps not ready to have a black store manager." Turley Dep., pp. 52-53.

**Admit.**

18. Turley only made this comment to the plaintiff because her opinion is that Pontiac is more of a racist town, and because she was trying to make an upset employee feel better by telling him that he probably would not have been happy in Pontiac anyway. Turley Dep., pp. 56, 65.

**Admit.**

19. The plaintiff testified that in October, 2003, Turley told him that Jonland was being promoted to store manager in Pontiac, and said that it was not that he was not ready, but that Pontiac was not ready for him, and as a black male he would surely fail in that store, and that Walgreen's was doing him a favor because he would only get one shot at being store manager. Simple Dep., pp. 68-69.

**Admit.**

20. The plaintiff entered an overnight manager position with Turley as his supervisor in December, 2004, and had not reservations about working for her again because of her October, 2003, comment. Simple Dep., p. 184.

**Admit.**

21. Following Turley's comment to the plaintiff, Palmer orally reprimanded her, and informed her that any similar conduct in the future could result in further disciplinary action, including written discipline and termination of her employment. Palmer Dep., p. 25-26, Turley Dep., p. 78.

**Admit.**

23. Turley actually viewed the plaintiff as "promoteable", and gave him an exceptional/above average performance evaluation, the second-to-top rating. Turley Dep., pp. 36, 40.

**Admit.**

24. Palmer interviewed only Melissa Jonland for the Pontiac store manager position, and offered her the job during that interview. Palmer Dep., p. 97; Palmer Aff., para. 10.

**Admit.**

25. Jonland did not solicit the Pontiac store manager job before the interview. Melissa Jonland Deposition. p. 36.

**Admit.**

26. The plaintiff had no knowledge of the opening in Pontiac until Turley told him he had not gotten it after the decision had been made. Simple Dep., p. 70.

**Admit.**

27. No notification was given to Walgreen's employees that the store manager position in Pontiac was becoming available before it was filled. Turley Dep., pp. 22-23.

**Admit.**

33. Jonland had been with the company longer that the plaintiff (since 1994), had three years of college, and had herself been either an assistant manger or EXA for four years (an EXA since 2001) before being promoted to manage the Pontiac store. Jonland Dep., pp. 5-8, 21, 30-31.

**Admit.**

35. The normal time spent as an EXA was a little over two years. Simple Dep., p. 13.

**Admit.**

36. Palmer offered the plaintiff the opportunity to become a store manager multiple times. Palmer Dep., p. 29.

**Admit.**

37. In November, 2001, when the plaintiff had been an EXA for two and a half years, Palmer offered the plaintiff the store manager position in the Walgreen's store in Kankakee, Illinois. Palmer Dep., p. 28; Simple Dep., p. 31.

**Admit.**

38. The Kankakee store's sales and profitability were comparable to, and may have been higher than, those of the Pontiac store. Palmer Dep., p. 93.

**Admit.**

39. The plaintiff declined the Kankakee position, even though it would have been a $7,000 increase in salary, because he would lose his wife's salary, he did not want to relocate, and he believed the store was in an African-American, socioeconomically-challenged neighborhood. Simple Dep., pp. 29-30.

**Admit.**

40. In November, 2002, Palmer offered the plaintiff the store manager position in the Walgreen's store at 600 South Western Avenue in Peoria, Illinois. Palmer Dep., pp. 28-29.

**Admit.**

41. Palmer also offered the plaintiff relocation consideration (moving expenses) to assist him if he wished to move his home from the Bloomington-Normal area to the Peoria area. Palmer Dep., pp. 29-30.

**Admit.**

44. Turley asked the plaintiff in November, 2003, if he was interested in the Court Street store in Kankakee, but he told her that he was not. Simple Dep., p. 56.

**Admit.**

46. The plaintiff turned down the Peoria job because of the manner in which Palmer offered the job, the distance of the commute, the location of the store in an African-American neighborhood, and the fact that the store would be closing in 16 months and merging with another store. Simple Dep., pp. 45-47.

**Admit.**

47. In April, 2004, Palmer asked the plaintiff if he was interested in applying for the manager's position at the Plainfield store, outside of the Illinois North District, but the plaintiff was not interested because the position would have required him to relocate. Simple Dep., pp.58-62.

**Admit.**

48. In October, 2004, Palmer advised the plaintiff that he was considering EXA candidates for promotion to store manager at 1700 E. Court Street in Kankakee, Illinois, and asked if he was interested in interviewing for the position and willing to relocate to Kankakee. Palmer Dep., pp. 106-08; Palmer Dep. Ex. 13.

**Admit.**

49. The plaintiff responded to Palmer's October, 2004, communication by informing Palmer that he was not willing to relocate to Kankakee and "not interested in being a store manager at this point in my career." Palmer Dep. Ex. 13; Simple Dep. pp. 173-174.

**Admit.**

50. Store managers are paid a base salary and a bonus that is based on the store's profitability. In 2002, the Pontiac store manager preceding Jonland had a base salary of $45,000 per year, which was increased in 2003 to $49,200. Palmer Aff., para. 11.

**Admit.**

52. The Walgreen's store at 600 South Western Avenue in Peoria was closed on August 18, 2005, when it was consolidated with the Main Street store in Peoria to form a new store on Western Avenue in Peoria. Palmer Aff., para. 13.

**Admit.**

57. In April, 2004, the plaintiff was only interested in store manager positions at the five stores in the Bloomington-Normal area, or any store in Peoria that "would have been driveable." Simple Dep., pp. 62-63.

**Admit.**

59. As of the summer of 2004, the plaintiff decided that he no longer wanted to be considered for employment as a store manager, that he no longer had the drive or desire to be a store manager, and that it would not be fair to Walgreen's for him to take such a position. Simple Dep., pp. 167-68, 170.

**Admit.**

60. The plaintiff filed a Charge of Discrimination with the EEOC on February 12, 2004. Complaint, para. 5.

**Admit.**

61. The distance between the plaintiff's home and the Walgreen's store at 600 South Western Avenue, Peoria, was 48 miles and the driving time was 55 minutes. The distance and driving time from his residence to the Pontiac store were 36 miles and 43 minutes. www.randmcnally.com

**Admit.**

**(2.) MATERIAL FACTS CLAIMED TO BE DISPUTED**

6. Although his decision is subject to the approval of his supervisors, the district manager has complete discretion in hiring store managers, and other store managers have no input. Palmer Dep., pp. 7-9, 32.

**Deny.** (Donez Dep., pp. 33-34; Simple Dep., p. 85; Palmer Ex. 1, Answer 11)

7. Palmer makes a subjective decision in filling store manager positions, and does not consider written documentation or the performance evaluations of EXAs done by store managers unless he is uncertain of his choice. Palmer Dep., pp. 39-40, 54-55, 109.

**Deny.** (Palmer Ex. 1, Ans. 11; also Palmer Ex. 10; also contradicts defendant's answer to paragraph 11 of complaint.)

10. Typically, Walgreen's assigns new store managers promoted from the ranks of EXAs to stores in the bottom one-third tier in terms of volume and profitability, in order to enable the new store manager to gain proficiency in his or her skills in a less pressurized environment and to minimize the possible loss to profits should the new manager not succeed. Palmer Dep., p. 42; Palmer Aff., para. 4.

**Deny.**  (No reference to bottom third on p. 42, also see Palmer Ex. 1, Ans. 6)

If they perform well, they have the opportunity to become a manager at a higher profit store.  Palmer Aff., para. 16.

**Deny.**  (Did not state in deposition, plaintiff's Motion to Strike is pending.)

12.  Palmer does not use racial demographic data for Walgreen's stores in the selection process for store managers.  Palmer Dep., p. 48.

**Deny.**  (Palmer Ex. 2 specifically references African-American v. Caucasian store make-up.)

13.  Palmer did not refer to performance evaluations in selecting Melissa Jonland for the Pontiac store manager position in October, 2003, because he "was solid on Ms. Jonland as the candidate for that store".  Palmer Dep., p. 119.

**Deny.**  (Palmer Ex. 1, Ans. 11; Turley Dep., p. 37)

14.  When Palmer selected Jonland doe the Pontiac job, Leanne Turley, the store manager who was the plaintiff's supervisor in Bloomington at the time, was not consulted by Palmer or anyone else.  Turley Dep., p. 22.

**Deny.**  (Palmer Ex. 1,Ans. 11; Turley Dep., p. 37; Donez Dep. pp. 33-34)

22.  Neither race nor Pontiac's "readiness" for a black store manager, as expressed by Turley, played any part in Palmer's decision regarding the Pontiac store manager position.  Palmer Dep., pp. 96-98.

**Deny.**  (Palmer Ex. 2 specifically alludes to African-American v. Caucasian breakdown.)

28.  Palmer did not solicit applications or conduct other interviews for the Pontiac job because it was an existing opening in an ongoing store that had to be filled reasonably

soon, and Palmer was familiar with the qualification of the EXAs in the district. Palmer Aff., para. 10.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending. Also see Palmer Ex. 1, Ans. 11)

29. The first store manager in Pontiac, a Vietnamese male, Tuan Nguyen, hired by Palmer, left in January, 2001, and the second manager was demoted in October, 2003, because of his violation of company policy. Palmer Aff., para. 5.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending.)

30. Palmer decided that EXA Melissa Jonland possessed the qualities required by the situation in the Pontiac store: employee morale was low, investment management was weak, and store condition and staff productivity had declined. Palmer Aff., paras. 5-6.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending.)

31. Jonland was chosen for the Pontiac job because her performance as an EXA has demonstrated that she had strong and consistent performance in her personal productivity, good communication skills, kept to the task at hand, and had good attention to detail. Palmer Aff., para. 6.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending.)

32. Jonland had also had demonstrated strength in investment management in the two stores where she worked, and better performance in investment that the plaintiff, who had preceded her as EXA at the 1110 Main Street store in Bloomington. Palmer Aff., para. 7.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending. Additionally, Jonland testified that she did not have any involvement in purchasing or the budget while an assistant manager. Jonland Dep., p. 28.)

34. At the time Palmer selected Jonland for the Pontiac position in October, 2003, three other EXAs besides the plaintiff had more seniority than Jonland. Palmer Aff., para. 9.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending. Also see Palmer Ex. 1, Ans. 11)

42. In December, 2002, Palmer offered the plaintiff the store manager position in the Walgreen's store on Main Street in Peoria, Illinois. Palmer Dep., p. 31.

**Deny.** (Simple Dep., p. 54.)

43. As part of the December, 2002, offer of the Main Street store manager position, Palmer again offered the plaintiff relocation consideration if he wished to move his home to Peoria. Palmer Dep., p. 31.

**Deny.** (Simple Dep., p. 54.)

45. On April 30, 2004, Palmer offered the plaintiff a position as store manager in the Walgreen's store at 600 South Western Avenue in Peoria, Illinois. The plaintiff turned down this position. Palmer Dep., pp. 76-77.

**Deny.** (Turley stated "I am required by law to offer you this job." Simple Dep. p. 57; also Palmer Ex. 1, Ans. 3 did not mention.)

51. Jonland's base starting salary as store manager in Pontiac was $46,500, which increased to $49, 800 in 2004. Palmer Aff., para. 12.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending.)

53. In 2002, the Western Avenue store had two managers: the first manager's salary was $46,500 per year, and the second manager's was $45,210, increasing to $46,920 in 2003 and $49,920 in 2004.  Palmer Aff., para. 13

**Deny.**  (Not stated in deposition, plaintiff's Motion to Strike is pending.)

54. In May, 2002, the Pontiac and Western Avenue store managers each received bonuses of $7,200; in 2003, the Pontiac store manager received a bonus of $15,650 and the two store managers at the Western Avenue store received a total of $8,538 in bonuses.  In 2004, the Western Avenue store managers received a total of $12,250 in bonuses while the Pontiac store manager received a total of $14,157 for her bonus.  Palmer Aff., para. 14.

**Deny.**  (Not stated in deposition, plaintiff's Motion to Strike is pending.)

55. Had the plaintiff accepted the Western Avenue store manager's position on April 30, 2004, his base salary would have been $46,500 and the responsibilities, status, promotional opportunities and working conditions of the store manager's position at the Western Avenue store were the same as those at the Pontiac store.  Palmer Aff., para. 15.

**Deny.**  (Not stated in deposition, plaintiff's Motion to Strike is pending.)

56. After the Western Avenue store closed in August, 2005, its manager became the manager at the 4818 N. Sheridan store in Peoria, a higher profit store, in keeping with the typical process in which an EXA starts at a lower profit store and, based on his or her performance, has the opportunity to become a manager at a higher profit store.  Palmer Dep., p. 42; Palmer Aff., para. 16.

**Deny.**  (Not stated in deposition, plaintiff's Motion to Strike is pending.)

58. The Illinois North District covers 28 stores spread over a large demographic area, which includes Kankakee, Pontiac, Bloomington, Peoria, Pekin, Macomb, Canton and Galesburg, and of these stores EXAs are only eligible to promotion to the lower profit stores.  Palmer Dep., p. 42; Palmer Aff., para. 4.

**Deny.** (Not stated in deposition, plaintiff's Motion to Strike is pending.)

For instance, the Knoxville store in Peoria has had two new managers between 2001 and 2005, but the Plaintiff, an EXA, could not be considered for these openings, because the Knoxville store in a higher profit store that is a second-jump promotion for individuals who are already store managers.  Palmer Dep., pp. 87-89.

**Deny.**  (On p. 89, Palmer stated he didn't know if Knoxville had always been a higher profit store.)

        ERIC D. SIMPLE, Plaintiff,

        By: s/Nile J. Williamson
           NILE J. WILLIAMSON
           ATTORNEY AT LAW
           1926 ASSOCIATED BANK PLAZA
           PEORIA, ILLINOIS 61602-1104
           TELEPHONE: (309) 677-5950
           FAX: (309) 677-5952
           E-MAIL: nilew@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>August 8, 2006</u>, I electronically filed the foregoing <u>Plaintiff's Response to Allegedly Undisputed Material Facts</u> with the Clerk of the U.S. District Court by using the CM/ECF system which will send notification of such filing to the following:

    L. Lee Smith
    Hinshaw & Culbertson
    456 Fulton Street, Suite 298
    Peoria, IL 61602

 

s/Nile J. Williamson
NILE J. WILLIAMSON
ATTORNEY AT LAW
1926 ASSOCIATED BANK PLAZA
PEORIA, ILLINOIS 61602-1104
TELEPHONE: (309) 677-5950
FAX: (309) 677-5952
E-MAIL: nilew@aol.com

**PLAINTIFF'S APPENDIX TO UNDISPUTED MATERIAL FACTS**

Document #1……………………….Palmer Exhibit #1
Document #2……………………….Palmer Exhibit #2
Document #3……………………….Palmer Exhibit #10
Document #4……………………….Dones Deposition pages 33-34
Document #5……………………….Turley Deposition page 37
Document #6……………………….Simple Deposition pages 54, 57 and 85
Document #7……………………….Jonland Deposition page 28