## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC D. SIMPLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-1305 |
| | ) |
| WALGREEN CO., an | ) |
| Illinois Corporation, | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

This case represents a pattern of invidious, direct and indirect discrimination by Walgreen's against its African-American prospective manager Eric Simple. Plaintiff will show that defendant Walgreen's charts the stores in the Illinois North Region by their African-American versus Caucasian make-up and the store offers made to the only two African-American managers during the time frame of 2000 and 2005 (Montez Dones and Eric Simple) were made to stores with the highest African-American make-up in the Illinois North Region. Perhaps no evidence is more profound than the basis upon which Walgreen's presents its pretext position in its filings. Paragraph 11 of the complaint specifically alleged that the district manager made the selection (of store managers) on the basis of subjective analysis of work performance and that no objective standards were used for that purpose. (Paragraph 11, Complaint) The defendant denied this paragraph in total. In filing its motion for summary judgment, defendant premised undisputed issue of material fact number 7 that Palmer (district manager) makes subjective decisions in filling store manager positions and does not consider written documentation or the

performance evaluations of EXAs done by store managers unless he is uncertain of his choice-in direct contradiction to its answer. Defendant attempts to portray the Pontiac store as being in the lower third of its economic store base but ignores the fact that the Pontiac store was listed by the defendant itself as over 80% Caucasian in customer make-up while the stores offered to Eric Simple during the operative time frame were in excess of 40% African-American customer base. The defendant has admitted in its answer that since April of 1999 Eric Simple had made it known to Walgreen's that he wished to be a store manager in the Bloomington-Normal area. (Answer para. 10, Complaint) Notwithstanding this admission, defendant now suggests to this court that job offers in Kankakee and Peoria fulfill this wish even though the stores offered were predominantly African-American. Plaintiff will present both direct and indirect evidence of Title 7 discrimination with respect to defendant's failure to offer or even interview plaintiff Eric Simple for the October, 2003, store opening position for manager at Pontiac, Illinois. Since part of Simple's damage argument is the psychological toll on him temporary sapped his decision to be a store manager after October, 2003, defendant's request for summary judgment as to back and front pay is not only premature but is barred by estoppel precipitated by defendant's own conduct.

**ADDITIONAL BACKGROUND**

The Illinois North Region of Walgreen's consisted of 28 stores and throughout the operative time period Mike Palmer was the district manager and plaintiff Eric Simple worked within stores in the Illinois North District. (Palmer exhibits #1 and #2.) In order to be appointed a store manager by Walgreen's, the individual must serve as an executive assistant manager (EXA) and the district manager identifies EXAs who are considered

suitable for promotion to a store manager's position based upon the EXA's performance reviews and compatibility of their skills with the requirements of particular stores. (P. 3, Palmer ex. #1.) Palmer maintained that in November, 2001, Eric Simple had been offered the store manager's position at the store at 1700 E. Court Street, Kankakee, IL[1]; in November, 2002, Simple was offered the store manager's position at the 600 S. Western Avenue store in Peoria, IL, and in December, 2002, Simple had been offered the store manager's position for the store at 1109 W. Main Street, Peoria, IL. (P. 2, Palmer ex. #1.) The store at W. Main Street was subsequently closed and the Kankakee and Western Avenue stores were both listed by Walgreen's as having the lowest economic level available with the largest African American customer base. (Palmer ex. #2.) **In the year 2003 when the store manager's job in Pontiac, IL, became available, Walgreen's did not have an affirmative action policy.** (Palmer deposition page 32; Turley deposition page 10.) There is a material issue of fact on the offers. Simple denied that he had ever been offered the Main Street store in Peoria. (Simple deposition page 54.) Simple testified that the Kankakee store offer was made by Leanne Turley in November, 2003, when she stated "By law I'm obliged to let you know that there may be an opening on the Court Street (Kankakee) store." (Simple dep. p. 57.) Prior to the Pontiac store manager selection, plaintiff Simple had advised district manager Mike Palmer that he wanted to restrict his own managerial job search in terms of the distance from his home in Bloomington, IL. (Palmer dep. p. 84.) District manager Palmer testified that this job search geographical limitation was understandable. (Palmer dep. p. 84.) Palmer testified that other EXAs had made the same request of him in the past.

---

[1] There were two Kankakee stores-Palmer offered Simple the low income, high African-American customer base store. (Palmer Ex. #2)

3

(Palmer dep. p. 84.) In October, 2003, without posting a notice for the vacancy of the Pontiac store manager position, Palmer selected Melissa Jonland, a white female, for the position after interviewing only Jonland.

**SUMMARY JUDGMENT STANDARD**

In determining whether any genuine issue of material fact exists, the court must construe all facts in a light most favorable to the non-moving party. See **Anderson v. Liberty Lobby, Inc.**, 477 US 242, 255 (1986). The seventh circuit applies the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. See **Bellaver v. Quanez Corp.**, 200 F.3d 485, 491 (7th Cir. 2000); **Geier v. Medtronic, Inc.**, 99 F.3d 238, 240 (7th Cir. 1996); **Venturelli v. ARC Cmty. Servs., Inc.**, 350 F.3d 592, 599 (7th Cir. 2003).

Under Title 7 it is unlawful for an employer to discriminate against an employee because of race, color, religion, sex, or national origin. 42 USC § 2000e-2(a)(1). A plaintiff may prove intentional employment discrimination under Title 7 by using either the direct or indirect method. **Cianci v. Pettibone Corp.**, 152 F.3d 723, 727-728 (7th Cir. 1998). The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose. Id. @ 727. Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. **Rogers v. City of Chicago**, 320 F.3d 748, 753 (7th Cir. 2003) and **Plair v. E.J. Brach & Sons, Inc.**, 105 F.3d 343,347 (7th Cir. 1997). A plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional

4

discrimination by the decision maker.  **Troupe v. May Department Stores**, 20 F.3d 734, 737 (7th Cir. 1994).  A plaintiff can prove his discrimination claim with the indirect method of proof by employing the burden-shifting method originally established in **McDonnell Douglas v. Green**, 411 US 792 (1973).  Under this method, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Id. @ 802.

The burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the employee's termination, after which the employee must be afforded a fair opportunity to show that employer's stated reason for the plaintiff's termination was pretext.  Id. @ 802-5.

Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences in the facts are jury functions, not those of a judge, whether the court is ruling on a motion for summary judgment or for a directed verdict.  See **Freeman v. Madison Metro. School District**, 231 F.3d 374, 379 (7th Cir. 2000, citation omitted).  The seventh circuit has stated that "Courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." **Wallace v. SMC Pneumatics, Inc.**, 103 F.3d 1394, 1396 (7th Cir. 1997).  In this instance, plaintiff Simple has the burden of setting out a prima facie case of race discrimination under Title 7 by presenting evidence that he: 1) belongs to a racial minority group; 2) performed his job satisfactorily and was qualified; 3) was not promoted; and 4) similarly situated employees outside of his protected group were treated more favorably.  **Hughes v. Brown**, 20 F.3d 745, 746 (7th Cir. 1994).  Finally, under the indirect **McDonnell Douglas** method, if the defendant proffers a non-discriminatory

5

reason(s) and plaintiff believes they are pretextual, plaintiff would have to show one of the following: 1) defendant's explanation of their decisions has no basis in fact; 2) the explanation was not the "real" reason; or 3) the reason stated was insufficient to warrant the allegedly discriminatory action. **Tincher v. Wal-Mart Stores, Inc.**, 118 F.3d 1125, 1130 (7th Cir. 1997). Plaintiff will present evidence of indirect and direct discrimination so that both sides of the **McDonnell Douglas** protocol will be met.

### DIRECT EVIDENCE-PONTIAC WAS NOT READY TO HAVE A BLACK STORE MANAGER

One week after plaintiff was not offered the store manager's position in Pontiac, IL by the defendant (store #5460), he spoke with Leanne M. Turley, his own store manager, about why he had not been offered the Pontiac position. Turley stated to Simple in substance: **At the same time, I may have stated that Pontiac was possibly not ready to have a black manager. It is well known in this area that some of the smaller, outlying towns have some very racist tendencies, and I was simply trying to make Eric feel better because my feeling was that he may not have been very happy working there.** (Turley dep. ex. #3.) In March or April of 2003, Eric Simple began working at store #5188 at GE and Veterans Parkway in Bloomington, IL, the store managed by Leanne Turley (Turley dep. pp. 32 and 33). Turley did two evaluations of Simple as an EXA at her store during 2003. (Turley dep. pp. 32 and 33.) Turley had recommended to district manager Mike Palmer that Simple be promoted to a store manager. (Turley ex. p. 35.) District manager Palmer had to approve both evaluations. (Turley dep. p. 37.)

Montez Dones, store manager at store #2588 in Normal, IL, described the process for picking a store manager by the district manager as follows:

6

**Q:** Mr. Palmer makes all appointments to the store manager jobs --
**A:** To my knowledge --
**Q:** What district is that referred to again?
**A:** District 28, Illinois North to my knowledge.
**Q:** Since you have worked at Walgreen's from 1994, has Mr. Palmer been the district manager of Illinois North?
**A:** Yes.
**Q:** And since you've been an employee at Walgreen's, are you aware of any other individual who has input or decision-making ability in the appointment of store managers in the Illinois North region other than Mike Palmer?
**A:** He appoints the managers to their positions.
**Q:** Yes, sir. I'm asking if you're aware of any other individual who has input in that process either because of your personal involvement or because you've been told that would assist Mr. Palmer in that position process.
**A:** When I became store manager, he consulted Leanne Turley, asked her whether or not I was ready to be a store manager.
**Q:** And what was Leanne Turley's position?
**A:** Store manager.
**Q:** You were working in her store?
**A:** Yes.
**Q:** So, in your own case, Mr. Palmer consulted with a store manager that you were working at to ask that superior if you were ready to be a store manager?
**A:** To my knowledge, that's correct.
**Q:** And is that also what you've observed in other situations where Mr. Palmer appoints store managers in the Illinois North District?
**A:** I would have to say yes. (Dones deposition pages 33 and 34.)

Eric Simple confirmed that based on statements of Walgreen's, the decision to fill an opening was based upon the input of store managers. (Simple dep. p. 85.) Palmer stated under oath that he relied on the EXA's performance reviews when picking a store manager. (Palmer ex. #11, p. 3.) Although Turley was not a final decision maker, the seventh circuit has held that if a person who made the derogatory remarks provided input into an employment decision and the remarks were made around the time of or in reference to that decision, it may be possible to infer that the decision makers were influenced by those discriminatory feelings. **Anderson v. National Railroad Passenger Corporation, aka Amtrak**, 2006 US Dist. Lexis 21647 (N.D. IL 2006) at page 9 citing **Rozskowiak v. Village of Arlington Heights**, 415 F.3d 608, 612 (7th Cir. 2005)(citing

7

**Hunt v. City of Markham**, 219 F.3d 649, 652-53 (7th Cir. 2000)).  Here, Turley's comments were made in October of 2003 after an October 2003 employment decision by Palmer to select Melissa Jonland to the Pontiac position in place of Eric Simple.  (Turley dep. p. 53.)  A recap of store manager evaluations and store manager evaluations of their subordinates, specifically EXAs, AMNs and MGTs for the year 2003, was used by Palmer to make forward manpower plans when he needed to make changes in store manager operations.  (Palmer dep. pp. 60 and 61, Palmer ex. #10.)  Palmer specifically used this document as one of the tools that he would review before he considered the replacement of a store manager that was leaving.  (Palmer dep. p. 62.)  Eric Simple is listed on page 3 of Palmer's exhibit #10 as having exceptional, above average ratings for 2003 and being projected **"can promote to store manager soon"**.  Melissa Jonland, the person promoted to the Pontiac store, is listed on the same exhibit on the same page as only **"a future store manager"**.[2]  Thus, there is little argument that Palmer used Turley's evaluations of Simple in making a determination as to whom he should pick for the Pontiac store manager and that Turley's own comments relating to race constitute direct evidence of defendant's discrimination against plaintiff Simple.

Further evidence of direct discrimination is Walgreen's identification of its store by ethnic (African-American v. Caucasian) make-up and the assignment of African-American managers (Dones and Simple) to the stores with the highest African-American make-up.  Walgreen's identifies its stores as to income level and ethnicity arrangement.  (Palmer ex. #2.)  Four stores in the Illinois North Region during 2004 had ethnicity arrangements of white at more than 25% and African Americans at 15-40%: 1200 W. War Memorial Drive, Peoria Heights, IL; 2324 W. War Memorial Drive, Peoria, IL; 1109

---

[2] Sales/scripts for Simple: 13.8; for Jonland: 7.2.  Hire date Simple: 4/26/95.  Hire date Jonland: 8/8/94.

W. Main Street, Peoria, IL (since closed); and 2515 N. Knoxville Avenue, Peoria, IL. (Palmer ex. #2.)  Two stores were identified as having an African American arrangement in excess of 40%: 600 S. Western, Peoria, IL and 1700 E. Court, Kankakee, IL. (Palmer ex. #2.)  The Pontiac store at 1001 W. Reynold Street was identified as having an average income between $40-60,000 and a customer base that was in excess of 80% white. (Palmer ex. #2.)  Palmer only offered Simple the store(s) with the highest African-American make-up.  Jonland's **first** offer was a store with more than 80% Caucasian customer base and in the Bloomington-Normal area.

### DIRECT EVIDENCE-THE MOSAIC

In **Haywood v. Lucent Technologies, Inc.**, 169 F.2d 890, 910, (N.D. IL 2001, affirmed 2003 US App. Lexis 5490 7th Cir. 2003) the court noted the mosaic approach allowed by the seventh circuit as to direct evidence of discrimination as follows:

> Under the direct approach, the Seventh Circuit has held that a plaintiff can build "direct" evidence from a mosaic of circumstantial evidence which may show that employer's decision was motivated by an impermissible purpose. **Troupe v. May Dept. Stores co.**, 20 F.3d 734, 736 (7th Cir. 1994); see also **Pafford v. Herman**, 148 F.3d 658, 665 (7th Cir. 1998).  Circumstantial evidence, if sufficiently persuasive, may defeat a motion for summary judgment on a Title 7 claim. **Troupe**, 20 F.3d at 736.  The "mosaic of evidence" under **Troupe** can consist of many different kinds of evidence non conclusive in itself.  However, a plaintiff must allege enough of them to satisfy this factor. **Bickerstaff v. Nordstrom, Inc.**, 48 F. Supp. 2d 790, 797 (N.D. IL 1999). In **Troupe**, the court stated that there are three types of circumstantial evidence upon which a plaintiff can rely in order to avoid the **McDonnell Douglas** burden-shifting method: 1) evidence consisting of suspicious timing, ambiguous statements, oral or written, behavior directed toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; 2) evidence, whether or not rigorously statistical, that similarly-situated employees who were not in the protected group received systematically better treatment; and 3) evidence that "the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." **Troupe**, 20 F.3d at 736.

Plaintiff will analyze the three prong test identified in **Troupe** as follows:

1.) As already noted, a person having input into the decision making process for hiring store managers stated within a week of the Pontiac manager placement that the city of Pontiac was not ready for a black manager and implicitly suggested that Pontiac itself was racially tinged. All persons deposed in the litigation have indicated that Walgreen's did not have an affirmative action policy in the year 2003. (Palmer dep. p. 32; Turley dep. p. 10.) Prior to the Pontiac manager placement, Simple had advised Mike Palmer that he wanted to restrict his own managerial job searched in terms of distance from his home in Bloomington, IL. (Palmer dep. p. 84.) Palmer stated that this job search geographical limitation was understandable. (Palmer dep. p. 84.) Palmer stated other EXAs had made the same request of him in the past. (Palmer dep. p. 84.) Simple advised Palmer after being offered the Western and Main Street stores that he was disappointed that these were the only options he was offered. (Palmer dep. p. 86.)

2.) The most compelling bit of circumstantial evidence establishing the mosaic direct discrimination by Walgreen's involves the placement of Melissa Jonland as Pontiac store manager over Eric Simple. In 2003, there was no process or procedure whereby Walgreen's picked its store managers. (Palmer dep. p. 31.) The selection of the store managers was done by the district manager. (Palmer dep. p. 31.) Juxtaposed against their qualifications, it should be clear that Simple was more qualified for the Pontiac manager's job than Melissa Jonland. Palmer knew that Eric Simple had a college degree and Melissa Jonland did not. (Palmer dep. p. 96.) Jonland was the only person Palmer interviewed for the Pontiac

managers job. (Palmer dep. p. 97.) At the time Melissa Jonland was picked for the Pontiac manager's position, she had received a written write-up for using the words "fucking" and "shit" in dealing with an Indian employee named Shashi Mishra. (Jonland dep. p. 17.) There was no prior incident of racial insensitivity involving Eric Simple. Simple and Jonland had similar hire dates with Walgreen's, (Palmer dep. ex. #10) yet Simple had worked in management for 9 years and Jonland only 4 years.

3.) Mr. Palmer stated that he always felt that Eric Simple had the potential and the drive to be a successful Walgreen's store manager. (Palmer dep. pp. 83 and 84.) Leanne Turley, at one time the store manager for both Eric Simple and Melissa Jonland, did not advise Mike Palmer of the derogative comment Jonland had made to a fellow Indian employee while Jonland was under Turley's supervision. (Turley dep. pp. 15 and 16.) Turley testified that in the Illinois North District there was normally a notification of when a store opening was coming up. (Turley dep. p. 22.) In the case of the opening for the Pontiac store manager's job, there was no notification to any Walgreen's employees that the Pontiac job was going to open up. (Turley dep. p. 22.) Simple testified that he was told of the Pontiac store manager's opening on October 2, 2003, when Leanne Turley called him into the office and told him that Palmer was going to go with Ms. Jonland for that opening. (Simple dep. p. 69.) At that time, Turley also told Simple that Mr. Palmer was doing him a favor because with Walgreen's he would only get one shot, one opportunity and that he would surely fail in the Pontiac store. (Simple dep. p. 69.) On October 3rd in a phone conversation, Simple testified that he told

Palmer that he was concerned as a 9 year employee that Melissa Jonland, who had only been in management for 4 years total and had worked in only two stores and under two managers, outshined him enough so that she got the Pontiac store manager's job. (Simple dep. p. 81.) Simple testified that Palmer stated that Jonland only outshined him in market appeal. (Simple dep. p. 81.) Simple indicated that Palmer then asked Simple "Are you playing the race card?". (Simple dep. p. 81.) In the same conversation, Simple advised Palmer that he had already worked in the Pontiac store for several days and he saw some of the areas in which the store needed help. (Simple dep. p. 82.) Simple testified that another management employee, Jessica Culbertson, told him in October or November of 2003 that race was a factor in Simple not being selected for the Pontiac store manager's job. (Simple dep. p. 137.) Culbertson herself confirmed that Leanne Turley told her Eric Simple did not get the Pontiac job because "Pontiac is not ready for Mr. Simple." (Culbertson dep. p. 22.) Culbertson was shocked that Simple did not get the Pontiac store opening because she believed Simple was more than qualified for it. (Culbertson ex. #1A.)

**INDIRECT EVIDENCE**

As noted, plaintiff may present the same evidence under the indirect proof method as provided by **McDonnell Douglas**, supra. Walgreen's must then articulate a legitimate, non-discriminatory explanation for its hiring decision. See **Contreras v. Suncast Corp.**, 237 F.3d 756, 760 (7th Cir. 2001) cert. denied 534 US 824, 122 Sup. Ct., 62151 L.Ed. 2d 29 ( 2002). In this instance, the only reason proffered by Walgreen's which bears the burden of proof on the issue is that Melissa Jonland was as well qualified as Eric Simple

12

for the Pontiac store position in October, 2003. Palmer now states that Jonland was selected for the position because her performance as an EXA had demonstrated she had strong and consistent performance in her personal productivity, good communication skills, kept to the task at hand and had good attention to detail. (Palmer affidavit para. 6) As noted, the EXA evaluations relied upon by Palmer (Palmer ex. #10, plaintiff's memorandum page 8) actually projected Eric Simple at a higher level of performance than Melissa Jonland. Palmer also stated that Jonland had demonstrated strength in investment management in the two stores where she worked and better performance in investment management than the plaintiff who had preceded her as an EXA at 1110 Main Street store in Bloomington, IL. (Palmer aff. para. 7) This would be news to Jonland who stated in her deposition:

> **Q:** When you are an assistant store manager, did you have involvement with the budget of the store, purchasing?
> **A:** No.
> **Q:** Who did that?
> **A:** Ms. Turley would have done that. (Jonland deposition page 28)

Defendant has already gone to great lengths in its motion to downplay the fact that Simple had a college degree at the time of the Pontiac decision and Jonland did not. While plaintiff may agree that a college degree is not the only basis for picking the Pontiac store manager, defendant has not come close to sustaining its burden of proof as to why Palmer would pick a white female store manager who had been found guilty of making a racially insensitive remark to a female co-worker. It has previously been noted the derogatory and profane comments that Jonland admitted to making to Mishra and defendant now argues that she did not make the additional statement of "fucking foreign

13

bitch" in the course of a conversation.[3] Suffice to say, when defendant is relegated to arguments of such a nature, it cannot and does not sustain its burden of proof that it hired Jonland on a legitimate non-discriminatory basis under the indirect method. Thus, defendant is forced to prove by a preponderance of the evidence that its legitimate non-discriminatory business reason for hiring Melissa Jonland was justified when 1) Jonland did not have a college degree and Simple did; 2) Jonland had been previously given a written disciplinary warning for making a racially insensitive remark to a fellow employee when Simple had received no such action; 3) Jonland had a lower EXA evaluation in 2003 than Eric Simple; 4) defendant had no written affirmative action policy at the time of the Pontiac hiring; 5) defendant had no written policy whatsoever relating to the hiring of managers; 6) defendant hired Melissa Jonland without posting a notice although notice was customary for the hiring of store managers in the Illinois North region at the time; 7) Jonland was hired without any competition from Eric Simple because Simple was not advised of the store opening; and 8) Simple had worked at Pontiac and Jonland had not.

It is suggested that the evidence under the indirect method with the additional element of defendant having to proffer a legitimate non-discriminatory business reason on its own proof is more overwhelming than under the direct method.

**BACK PAY/FRONT PAY**

Defendant now seeks a ruling on summary judgment on damage issues as well claiming that since Simple has turned down jobs he has failed to mitigate his damages as a matter of law and should be precluded back pay and front pay. Such an argument is certainly premature and inapplicable here. Simple stated that Walgreen's discrimination

---

[3] Not language describing "good communication skills" per Palmer affidavit, paragraph 6.

14

against him made him lose his self-esteem and self-worth (Simple dep. p. 167) but also stated that he was still willing to work for Walgreen's, loved what Walgreen's had done for him and his family and loved his job. (Simple dep. p. 167) Simple only stated that "at this point" he didn't have a desire to be a store manager. (Simple dep. p. 168) Since this is a temporary situation relating to the psychological effect on Simple as a result of Walgreen's discrimination, it should not be the basis for determining he is not entitled to back pay or front pay. Further, since Walgreen's created this psychological impact on Simple, it is estopped from attempting to deny Simple these damages. In **Sly v. United States**, 220 F.2d 212, 220 (7th Cir. 1955), the court approved the following language defining estoppel:

> The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts.

Walgreen's should not be rewarded for causing Simple to temporarily lose interest in a store manager's position when he indicates he still wants to be a long term and dedicated Walgreen's employee. Mitigation issues are almost always a matter of factual determination and should not be made as a matter of law. For the foregoing reasons and others inherent therein, defendant's motion for summary judgment should be denied.

ERIC D. SIMPLE, Plaintiff,

By: s/Nile J. Williamson
  NILE J. WILLIAMSON

>ATTORNEY AT LAW
>1926 ASSOCIATED BANK PLAZA
>PEORIA, ILLINOIS 61602-1104
>TELEPHONE: (309) 677-5950
>FAX: (309) 677-5952
>E-MAIL: nilew@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 8, 2006</u>, I electronically filed the foregoing <u>Plaintiff's Memorandum in Opposition to Motion for Summary Judgment</u> with the Clerk of the U.S. District Court by using the CM/ECF system which will send notification of such filing to the following:

>L. Lee Smith
>Hinshaw & Culbertson
>456 Fulton Street, Suite 298
>Peoria, IL 61602

>s/Nile J. Williamson
>NILE J. WILLIAMSON
>ATTORNEY AT LAW
>1926 ASSOCIATED BANK PLAZA
>PEORIA, ILLINOIS 61602-1104
>TELEPHONE: (309) 677-5950
>FAX: (309) 677-5952
>E-MAIL: nilew@aol.com

**PLAINTIFF'S APPENDIX TO MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Document 8…………………Mike Palmer Deposition pages 31, 32, 60, 62, 83, 84, 86, 96 and 97
Document 9…………………Eric Simple Deposition pages 54, 57, 69, 81, 82, 85, 137, 167 and 168
Document 10………………..Leanne Turley Deposition pages 10, 15, 16, 22, 32, 33, 35, 37 and 53
Document 11………………..Melissa Jonland Deposition pages 17 and 28
Document 12………………..Jessica Culbertson Deposition page 22, Exhibit #1A