**E-FILED**
Tuesday, 24 October, 2006  04:21:30 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ERIC D. SIMPLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1305 |
| | ) | |
| WALGREEN CO., an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Defendant Walgreen Co.'s ("Walgreens") Motion for Summary Judgment.  Also before the Court, tangential to Defendant's Motion for Summary Judgment, are Plaintiff's Motion to Strike the Affidavit of Michael A. Palmer, and Defendant's Motion to Strike Plaintiff's Response to Allegedly Undisputed Material Facts.  For the reasons set forth below, Plaintiff Simple's Motion to Strike the Affidavit of Michael Palmer [#49] is DENIED, Defendant Walgreens' Motion to Strike Plaintiff's Response to Allegedly Undisputed Material Facts [#54] is DENIED, and Defendant Walgreens' Motion for Summary Judgment [#48] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

## FACTUAL BACKGROUND

Plaintiff Eric Simple has a bachelor's degree from Illinois State University in Speech Communications.  Simple has been an employee of Walgreens since April 1995.  In April 1999, Simple was promoted from the position of Management Trainee to Executive Assistant Manager (EXA), and between 1999 and 2004, Simple worked as an EXA in various stores in the Bloomington-Normal area.  EXA is a salaried position with bonuses based on performance of the store and is the predicate position to becoming a store manager.

In the Walgreens business structure, the district manager is the person responsible for selecting store managers, though there is no written policy regarding how or by what criteria EXAs are to be selected for promotion.  Michael Palmer ("Palmer") is, and was at all relevant times, the district manager for Walgreens' "Illinois North" District, which includes the stores in Bloomington-Normal, Peoria, Kankakee and Pontiac.

The typical time spent as an EXA is approximately two years, after which an EXA becomes "promoteable."  Like EXAs, store managers are paid a base salary and bonus that is based on store profitability.  Since April 1999, Simple made it known to Walgreens that he wished to be a store manager in the Bloomington-Normal area.  The "Bloomington-Normal area" includes 5 stores out of 28 in the Illinois North District.

In November 2001, Palmer offered to Simple the store manager position at the East Court Street Walgreens in Kankakee.  Plaintiff declined the offer because he did not wish to relocate and believed that the store was in a predominantly African-American, socioeconomically challenged neighborhood.

In November 2002, Palmer offered to Simple the store manager position at the Walgreens on 600 South Western Avenue in Peoria.  Plaintiff also declined this offer for reasons not

apparent in the record.  Simple made it clear to Palmer that he was interested in store manager positions in the Bloomington-Normal area because he did not want to relocate his family.

The events at the center of the litigation occurred in October 2003.  In October 2003, Simple was working as an EXA as the Veterans Parkway/G.E. Road Walgreens in Bloomington. At that time, Leanne Turley ["Turley"] was the store manager of the Veterans Parkway/G.E. Road location, and was Simple's immediate supervisor.  In early October 2003, Palmer became aware that the Pontiac Walgreens was going to need a new store manager.  The Pontiac Walgreens is considered one of the five stores in the Bloomington-Normal area and was in the bottom quarter in profitability for stores in the district in 2003.

Palmer selected Melissa Jonland ["Jonland"], another EXA in the Illinois North district, for the Pontiac store manager position.  Jonland had been a Walgreens' employee since 1994. Palmer did not solicit applications for the store manger position or otherwise "post" the upcoming opening.  Palmer interviewed only Jonland and offered her the position during the course of the interview.

Soon after Palmer had selected Jonland as the new store manager for the Pontiac store, Turley informed Simple about the vacancy and that Palmer had already asked Jonland to fill the position.  Before this conversation, Simple had no knowledge of the opening in Pontiac.  Turley admits that during this conversation, she commented "something to the effect of the fact that Eric was not promoted to Pontiac and that the person that was promoted was probably a better fit for the store and that Pontiac was perhaps not ready to have a black manager."  Turley Dep., at 52–53.  Simple's version of Turley's comment is not much different.  He testified that Turley stated: "And it's not that you're not ready for the Pontiac store; it's that Pontiac is not ready for you because, as a black male, you will surely fail in that store.  Sales would suffer. . . . Walgreens is

doing you a favor because with Walgreens you only get one shot, one opportunity." Walgreens claims that Turley made this comment to Simple because she was trying to make an upset employee feel better by telling him that he probably would not have been happy in Pontiac anyway. Palmer orally reprimanded Turley for making this comment to Simple and informed her that any similar conduct in the future could result in her termination.

In November 2003, Turley asked Simple if he was interested in the East Court Street store in Kankakee. He told her that he was not. Not long after this offer, Simple filed a Charge of Discrimination with the EEOC on February 12, 2004.

In April 2004, Palmer offer Simple the store manager position at the Walgreens store at 600 South Western Avenue in Peoria. Simple turned down the position because he did not like the manner in which Palmer offered it to him, the store's location in an African-American neighborhood, and the fact that the store would be closing in 16 months and merging with another store.

In October 2004, after Simple had filed this action, Palmer asked Simple if he had interest in being considered for a store manager position at the East Court Street Walgreens in Kankakee. Simple informed Palmer that he was not willing to relocate and was no longer interested in becoming a store manager.

On September 3, 2004, Simple filed this action, pursuant to Title VII of the Civil Rights Act of 1964, alleging that Walgreens unlawfully discriminated against him because of his race. Walgreens has now moved for Summary Judgment. Simple moved to strike Walgreens' supporting affidavit of Michael Palmer, and responded to Walgreens' Motion for Summary Judgment. Walgreens has also moved to strike Simple's Response to Allegedly Undisputed Material facts. All three motions are fully briefed, and this Order follows.

4

## DISCUSSION

### I.  Simple's Motion to Strike the Affidavit of Michael Palmer

The first matter before the Court is Plaintiff Simple's Motion to Strike certain portions of Michael A. Palmer's Affidavit,[1] which was submitted by Walgreens in support of its Motion for Summary Judgment.

#### A.        Paragraphs 4, 6, and 7

Simple argues that the Court should strike paragraphs 4, 6, and 7 of Palmer's Affidavit because they "lack foundation, contain inadmissible conclusions and are in contradiction to" Palmer's deposition testimony.  Paragraphs 4, 6, and 7 state:

> 4.        The typical career path is for an EXA who is qualified to become a store manager to begin his or her career as a store manager in a store in the bottom one-third in terms of volume and profitability.  The reason for this is to enable the new store manager to gain proficiency in his or her skills in a less pressurized environment and to minimize the possible loss of profits should the new manager not succeed.  If the store manager succeeds at such a store, he or she may then be reassigned to a high profit store as openings occur.

> 6.        At that time, employee morale in the Pontiac store was low.  Investment management, meaning the maintenance of optimum inventory levels for the sales base, for the store was weak.  The overall store condition and the store productivity had also declined in the recent months at the store.  Ms. Jonland's performance as an EXA demonstrated that she had strong and consistent performance in her personal productivity, good communication skills, kept to the task at hand, and had good attention to detail.

> 7.        While Ms. Jonland had been an EXA I concluded she had demonstrated strength in investment management in the two stores where she worked.  This judgment was based on my subjective and objective review of the two stores which showed inventories were low in relation to sales.  As an EXA she would have been responsible, along with the store manager, for investment management in the stores.  Ms. Jonland's performance in this area was better than that of Mr.

---

[1] The body of Simple's Motion to Strike only raises objection to certain numbered paragraphs of Palmer's Affidavit.  However, the title of Plaintiff's Motion to Strike and the final paragraph of Simple's Memorandum in Support of the Motion to Strike request that the Court strike the entire Affidavit.  Simple does not set forth any basis for striking the entire Affidavit, and therefore the Court will only address the admissibility of the identified paragraphs.

Simple's, who had preceded her as an EXA at the 1110 Main Street store in Bloomington.

In response to Simple's argument that these three paragraphs lack foundation, contain inadmissible conclusions, and contradict Palmer's deposition testimony, Walgreens argues that the Court should not strike these paragraphs because, as district manager of the relevant Walgreens district, Michael Palmer had direct personal knowledge of the hiring process, and the information in these paragraphs does not contradict Palmer's deposition testimony.

Federal Rule of Civil Procedure 56(e) requires affidavits be made upon an affiant's personal knowledge and present admissible evidence. The court should disregard an affidavit that does not comply with the requirements of 56(e). *Friedl v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987).

Here, the Court does not agree with Simple's claims that paragraphs 4, 6, and 7 lack foundation and contain inadmissible conclusions. The first few paragraphs of the affidavit clearly set forth the foundational basis for the remaining paragraphs. In Paragraph 1, Palmer states that he is the district manager for the "Illinois North" district of Walgreens, which includes all of the stores relevant to Simple's claims of race discrimination. Additionally, Palmer states that he is the individual responsible for selecting new store managers. These qualifications provide a proper foundation for Palmer's statements in paragraphs 4, 6, and 7, which essentially describe the typical career path of a Walgreens manager and Palmer's evaluation of Jonland as a management candidate. Moreover, the Courts finds that these paragraphs do not contain "inadmissible conclusions." In his Motion to Strike and Memorandum in support, Simple does not explain which conclusions in these paragraphs are inadmissible and does not provide any specific grounds for striking them, other than making the blanket statement that "legal conclusions are not appropriate in affidavits in support of motions for summary judgments." Pl.

Mem. in support of Mtn. to Strike, at 3.  While the Court is aware and mindful of the general rule that legal conclusions are inappropriate for affidavits, the above paragraphs contain only statements of fact and Palmer's personal opinions.  These are not inadmissible conclusions.  To the extent these paragraphs could be interpreted as stating a legal conclusion, they will be disregarded by the Court in evaluating Walgreens' Motion for Summary Judgment.

Finally, Simple argues that the Court should strike paragraphs 4, 6, and 7 because the information therein contradicts Palmer's deposition testimony.  In response, Walgreens acknowledges that the paragraphs would be inadmissible if they contradicted Palmer's deposition testimony; however, Walgreens contends that the statements in the Affidavit are not contradictory to deposition testimony.

As a general rule, a party may not submit an affidavit whose conclusions contradict prior deposition testimony.  *Kalis v. Colgate-Palmolive Company*, 231 F.3d 1049, 1055 (7th Cir. 2000); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999) ("Courts generally ignore attempts to patch-up potentially damaging deposition testimony with a supplemental affidavit" unless the party offers a good explanation for the discrepancy).  However, it is permissible to submit a supplemental affidavit to clarify previous testimony or offer completely new testimony, *Maldonado*, 186 F.3d at 769, provided that the affidavit is not a flagrant attempt to shore up obvious gaps in deposition testimony or contradict the effects of it.  *Kalis*, 231 F.3d at 1055–56.

In his Motion to Strike and Memorandum in support, Simple fails to cite a single passage of Palmer's deposition that is contradicted by the statements of his affidavit.  Instead, Simple makes generic reference to "the substance" of Palmer's deposition testimony.  Parties are expected to plead their motions with a certain amount of precision, not leaving it up to the Court

scour a lengthy deposition transcript and ferret out any potential contradictions that the movant bears the burden of establishing. Nevertheless, the Court has reviewed Palmer's deposition and has not found any statements that are contradicted by paragraphs 4, 6, and 7 of his affidavit. Again, a deponent/affiant is permitted to supplement and clarify his deposition testimony. *Maldonado*, 186 F.3d at 769. Contrary to Simple's assertions, no rule restricts a deponent/affiant's affidavit testimony to only those matters queried by deposing counsel in the course of an earlier deposition. Accordingly, the Court declines to strike paragraphs 4, 6, and 7 of Palmer's deposition.

### B. Paragraphs 11, 12, 13, 14 and 16

Simple argues that the Court should strike paragraphs 11, 12, 13, 14, and 16 because they contain inadmissible hearsay. These paragraphs state:

11. Store managers at Walgreens are paid a base salary and a bonus. The base salary determined by me at the time the job is offered. The bonus is determined by the store's profitability, and takes into account not only the store's overall profitability but the improvement in profitability. Bonuses are paid annually to store managers. In 2002 the Pontiac store manager preceding Jonland had a base salary of $46,500. The base salary for the manager was increased in 2003 to $49,200.

12. Melissa Jonland's base salary starting as manager at the Pontiac store was $46,500. Her base salary was increased to $49,800 in 2004. She is still employed in that position.

13. Walgreen Store No. 1300 was located at 600 South Western Avenue in Peoria. That store closed on August 18, 2005, when it was consolidated with the Main Street store in Peoria to form a new store on Western Avenue in Peoria. In 2002 the manager of the Western Avenue store was paid $46,500 per year. A new manager was selected for the store later in 2002, and he was paid $45,120 in base salary. The salary increased to $46,920 in 2003 and $49,920 in 2004.

14. In May 2002, the Pontiac and Western Avenue store managers each received bonuses of $7,200. In 2003 the Pontiac store manager received a bonus of $15,650, and the two store managers (a change in managers occurred during the year) at the Western Avenue store received a total of $8,538 in bonuses. In

2004 the Western Avenue store managers received a total of $12,250 in bonuses, while the Pontiac store manager received a total of $14,157 for her bonus.

16.     Following the closing of the Western Avenue store in August 2005, the store manager at that store, Matt Quayle, became a manager is 4818 N. Sheridan, Peoria, a higher-profit store.  Because this district is relatively static in terms of population and few new stores are opening, it is typically the case for an EXA to start at lower-profit stores, and, based on their performance, they will then have an opportunity to become a manager at a higher-profit store.  This is what occurred with Mr. Quayle.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Ev. 801.  Hearsay statements are generally inadmissible, subject to limited exceptions.  Fed. R. Ev. 802, 803. Hearsay, like any other inadmissible evidence, may not be used to support or resist a motion for summary judgment.

Here, once again, Simple has not substantiated or explained his claims that these paragraphs are hearsay.  Rather, these paragraphs contain information that apparently comes from Palmer's personal knowledge, as Palmer oversees all of the managers in the district and states that he personally sets their base salary.  The Court recognizes that these types of salary figures are typically recorded in some sort of business record, and that this perhaps is the unmentioned basis for Simple's objection.  The Court is not called upon to delve into a thorough analysis of whether any such business records are the *actual* basis for Palmer's affidavit statements, as this argument was not raised by the movant.  Still, assuming a proper foundation was laid (and the Court has no reason to think that Walgreens could not lay such a foundation) such business records would almost certainly fall within an exception to the hearsay rule.  Accordingly, the Court also declines to strike paragraphs 11, 12, 13, 14 and 16 of Palmer's affidavit.

In total, Simple's Motion to Strike the Affidavit of Michael A. Palmer is DENIED.

## II.     Walgreens' Motion to Strike Plaintiff's Response to Allegedly Undisputed Material Facts

The second matter before the Court is Defendant Walgreens' Motion to Strike Plaintiff Simple's Response to Allegedly Undisputed Material Facts.  In short, Walgreens argues that the Court should strike Simple's pleading in opposition to Walgreens' Motion for Summary Judgment because it does not comply with various sections of Local Rule 7.1(D).  These sections require that a party opposing a motion for summary judgment divide his response into specified sections, to specifically respond to each of the movant's listed facts as "disputed, undisputed, or immaterial," and to separately list and number each additional material fact raised in opposition to the motion for summary judgment. Walgreens states that, because of Simple's failure to comply with local pleading rules, it cannot comply with Local Rule 7.1 in replying to the additional facts that Simple has submitted.

Walgreens correctly points out that Simple has failed to comply with the local rules governing pleadings, and that it is well within the Court's authority to strike Simple's Response to Walgreens' Motion for Summary Judgment.  *See* Local Rule 7.1 (D).  However, Walgreens has managed to reply to Simple's Response, despite the Response's nonconformance with local pleading requirements; any resulting noncompliance in Walgreens' Reply to Simple's Response is excused.  The Court finds that to strike portions of Simple's Response under these circumstances would unnecessarily delay this litigation, and therefore, Walgreens' Motion to Strike Plaintiff's Response to Allegedly Undisputed Material Facts is DENIED.

### III.  Walgreens' Motion for Summary Judgment

The final, yet principal, matter before the Court is Defendant Walgreens' Motion for Summary Judgment.  Walgreens first argues that it is entitled to summary judgment on the issue of liability.  Walgreens also argues that if the Court does not grant summary judgment on the issue of liability, Walgreens is entitled to summary judgment on the damage issues of front pay and back pay.

### A.       Summary Judgment Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  *Id*. at 325.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  *Holland*

*v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

### B.        Liability for Disparate Treatment

Title VII prohibits employers from discriminating "against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986).   Under Title VII, the plaintiff is required to establish that he has been the victim of intentional discrimination.  *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993).   The plaintiff may present direct proof of discrimination or may rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), indirect, burden-shifting method of proof.[2]  *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060–61 (7th Cir. 2003).

### 1.        Direct Method of Proving Discrimination.

Simple argues that he can proceed under the direct method.  A plaintiff proceeding under this method may rely on either direct evidence or circumstantial evidence.  *Logan v. Kautex Textron N. America*, 259 F.3d 635, 638 (7th Cir. 2001).  Here, Simple maintains that he can establish both direct and circumstantial evidence.

---

[2]  Simple also asserts a claim of racial discrimination under 42 U.S.C. § 1981.  However, his § 1981 claim need not be separately addressed, as the standards for resolving such claims are indistinguishable from those applied under Title VII.  Accordingly, Simple's § 1981 claim is implicitly resolved by the resolution of the Title VII discrimination claim.

### a.  Direct Evidence

Direct evidence "essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus."  *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).  Here, it is undisputed that Michael Palmer is the decisionmaker regarding selection of store managers for the Walgreens locations within the Illinois North District.  Simple does not allege that Palmer has made any derogatory remarks evincing direct evidence of Walgreens' discrimination in selecting Jonland as store manager of the Pontiac store, instead of Simple.  Rather, Simple alleges that Leanne Turley's comments to Simple soon after Palmer chose Jonland provide direct evidence of discrimination because Palmer allegedly relied on Turley's input in making his selection.  Walgreens argues that Turley's statement was not necessarily evidence of her own discrimination, and even if it was, Turley was not connected to Palmer's decisionmaking process with respect to the selection of a new store manager for the Pontiac Walgreens.

In general, derogatory statements made by a non-decisionmaker are not evidence that the adverse decision was discriminatory.  *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).  "However, if the person who made the derogatory remarks provided input into the employment decision—and the remarks were made around the time of and in reference to that decision—'it may be possible to infer that the decisionmakers were influenced by those [discriminatory] feelings.'"  *Id.* (quoting *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652–53 (7th Cir. 2000).

For example, in *Hunt v. City of Markham*, the plaintiffs had alleged that certain racist and "ageist" statements by the Mayor were direct evidence of the city council's discriminatory decisions to deny their requests for raises.  219 F.3d 649.  The District Court found that the

Mayor's statements were not those of a decisionmaker and therefore were not evidence of intentional discrimination. *Id*. at 652. The Seventh Circuit reversed the District Court's ruling. The Seventh Circuit concluded that although the mayor did not hold an actual seat on the city council, the fact that he stood in a position of influence over the council and recommended that the council take the action complained of made his statements evidence of the city's discrimination. *Id*. at 653.

In contrast, the Seventh Circuit in *Rozskowiak v. Village of Arlington Heights* did not find the derogatory comments of non-decisionmakers (the plaintiff's immediate supervising sergeant and commander) to be evidence of discrimination on the part of the Village Board that decided to fire him. 415 F.3d at 612–13. There, the sergeant had told the plaintiff that he "'would probably be losing [his] job because [he] was a stupid Polack.'" *Id.* at 613. Even though the sergeant had written up reviews of the plaintiff's performance that were relied upon by the decisionmakers, there was "no evidence that the information was inaccurate," and the "remarks were unrelated to [the plaintiff's] termination." *Id*. Similarly, the commander had stated that the plaintiff "was not cut out to be a police officer in Arlington Heights because he was Polish." *Id*. The commander was actually part of a committee of seven members that officially made personnel recommendations to some of the decisionmakers. *Id*. Still, the Seventh Circuit did not find that this was "sufficient input" to infer that the decisionmakers were influenced. The Court stated,

> In the case before us, Commander Kinsey did not have the singular influence over decision makers that the mayor in *Hunt* had; rather he was one of the [committee's] seven members, and they advised [the decisionmaker] by consensus. . . . There is no evidence that [the decisionmakers] met alone with Commander Kiney to discuss matters pertaining to Rozskowiak. . . . Indeed, [the decisionmakers] testified that they were unaware of the derogatory remarks that were directed at Rozskowiak until after [the adverse decision was made].

*Id*. at 613.

On this record, there is no indication that Palmer delegated his responsibility to Turley or failed to act on his independent judgment. Palmer has admitted that Turley may have provided some indirect input in his decisionmaking because he sometimes relies on a document that contains summaries of the store managers' evaluations of their EXAs. Palmer Dep., at 60–64. However, this spreadsheet contains only one line of information about each employee, and with respect to Eric Simple, it states only some personal and geographic information, that Simple's 2003 rating was "Exceptional/Above Average," and that his 1-Year Projection was identified as "Can Promote to MGR Soon." Even if Palmer did specifically rely on this spreadsheet in selecting Jonland, which Palmer has denied (Palmer Dep., at 64), it would not be helpful to Simple. Simple has not disputed the accuracy of this information that Turley provided and that Palmer may have relied on, and like in *Rozskowiak*, this "input" in the form of an accurate performance report is not the type of input that can connect the comments of a non-decisionmaker to an adverse employment action carried out by another.

Simple also offers the testimony of Montez Dones that when Dones was promoted from an EXA to store manager, Palmer personally consulted with Turley, and that this has happened other times in the Illinois North District. Dones Dep., at 33–34. However, Turley has testified that she and Palmer did not have any conversations about the Pontiac vacancy until after Palmer offered the position to Jonland. Turley Dep., at 54. Furthermore, Dones later testified that he had personally been considered for two different store manager positions, and that his personal knowledge of the process for hiring store managers was limited to what happened with the two stores for which he had been considered. Dones Dep., at 51–52. In other words, Dones did not have any personal knowledge of Palmer's or Turley's conduct in this case, or of any regular

customs of the manager selection process. Therefore, Dones' testimony does not establish that Turley provided personal input to Palmer about Simple.

Perhaps most importantly, Turley did not stand in a position of "singular influence" over Palmer, like the mayor in *Hunt*. Therefore, Simple has failed to establish that Turley's comments, even if derogatory, qualify as direct evidence of discrimination by the decisionmaker in this case.[3]

### b.    Circumstantial Evidence

A plaintiff proceeding under the "direct method" of proving discrimination may present circumstantial evidence of discrimination. Circumstantial evidence under the direct method allows the trier of fact "to infer intentional discrimination by the decisionmaker." *Rudin v. Lincon Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005). The Seventh Circuit has recognized three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. . . . [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief. . . .

*Id*. at 721 (citing *Troupe v. May Department Stores*, 20 F.3d 734, 736 (7th Cir. 1994)).

---

[3] As further direct evidence of discrimination, Simple offers a Walgreens report that lists all of the stores in the Illinois District and provides an "income level," presumably of the population surrounding the store, and the "ethnicity arrangement" of that population. Simple has argued that Walgreens only offers the African-American managers positions at the stores with the highest African American make-up. This is improperly labeled "direct evidence" of discrimination, but rather should be categorized as circumstantial evidence of discrimination because it relies on certain inferences to be considered as evidence of intentional discrimination. Accordingly, the Court will consider this evidence below in its evaluation of circumstantial evidence.

Here, Simple has failed to establish any of these three types of circumstantial evidence. In his Response to the Motion for Summary Judgment, Simple lists nearly three pages of facts that he claims amount to circumstantial evidence of discrimination. Much of this material is background information (e.g., that Palmer acknowledged that Simple's request to remain in Bloomington was reasonable) that does not contain even an implicit allegation of any misconduct by Walgreens. Furthermore, Simple has essentially made no allegations of the second or third types of circumstantial evidence, i.e., that similarly situated non-black employees received *systematically* better treatment, or that Simple was more qualified for the job but was passed over for Jonland for reasons "unworthy of belief."

With respect to the first type of circumstantial evidence, the so-called "mosaic of discrimination"—suspicious timing, ambiguous statements or behavior toward other members of the protected group, and other "bits and pieces"—Simple's allegations do not fit together to form such a mosaic. Simple has not cited any instances of suspicious timing or ambiguous statements or behavior toward any other African-American Walgreens employees. As for other "bits and pieces," Simple has again referenced the comments of Leanne Turley to the effect that Pontiac was not ready for a black manager. Just as the stray comments of non-decisionmakers do not qualify as direct evidence of discrimination, as explained above, these stray comments likewise do not establish circumstantial evidence of discrimination. *See, e.g*., *Davis v. Con-Way Transp. Central Express., Inc*., 368 F.3d 776, 777–78 (7th Cir. 2004); *Hussey v. Sunrise Senior Living Services*, 2004 WL 2033754, at *4 (N.D. Ill. Aug. 31, 2004). Simple also cites the testimony of a former Walgreens assistant manager, Jessica Culbertson, who told Simple that "race was a factor" in the selection process and that she believed that Simple was more qualified for the position than Jonland. Culbertson was even further removed from the decisionmaking process in

this case than Leanne Turley, and therefore, Culbertson's statements also cannot contribute to any mosaic of circumstantial evidence of discrimination.

Simple argues that the clearest circumstantial evidence of discrimination is the fact that Walgreens selected Jonland for the position despite Simple's superior qualifications.  As will be explained more fully below under the *McDonnell-Douglas* burden shifting framework, the Court finds that any disparity in qualifications between Jonland and Simple is not wide enough to create a reasonable inference of discrimination from Walgreens' choice to promote Jonland rather than Simple.

Simple contends that Walgreens identifies its stores by ethnic make up (African-American v. Caucasian) and assigns African-American managers (Dones and Simple) to the stores with highest African American make-up.  In support, Simple offers a Walgreens report that apparently identifies the income level and ethnic make-up of the population surrounding the stores in the district.  While Palmer admitted to knowing that this report existed, he denied ever relying on it in making promotional decisions.  Palmer Dep., at 48.  Simple admits that he was offered store manager positions at the South Western Avenue store in Peoria and the East Court street store in Kankakee.  The report identifies these stores as "Low Inc (<40K)" and "AfAm (>40%)."  The Pontiac store, in the "Rural" category, is identified as "Avg Inc (40-60K)" and "Wht (>80%)."

Simple's suggestion of some kind of Walgreens' conspiracy to place minority managers at stores with large minority populations loses its traction when the facts are examined further. Dones, the other African-American manager who Simple claims was mistreated by this Walgreens' policy, has been a store manager at the Normal location for the past five years.  The Normal store is identified as "Avg Inc (40-60K)" and "Wht (>80%)," just like the Pontiac store.

Also, Palmer previously hired a minority—Tuan Nguyen, a Vietnamese male—to serve as the Pontiac store manager when that location first opened.  Palmer Aff., at ¶ 10.  Simple has failed to credibly substantiate his claim that Palmer improperly relied on this data in making his promotional decisions; simply retaining census data on the Walgreens locations does not violate Title VII. The Court does not, therefore, assign significant weight to the report as circumstantial evidence of intentional discrimination.

Simple's remaining "bits and pieces" also do not add up to intentional discrimination. Simple argues that the following are further pieces of circumstantial evidence of discrimination: that Walgreens did not make a posting of the upcoming vacancy at the Pontiac store, even though openings were typically posted before; that Walgreens had no set process for manager selection and this was largely left to the discretion of the district managers; and that Walgreens had no affirmative action policy at the time period in question.  Simple also offers the alleged and ambiguous statement of Michael Palmer that Jonland "only outshined [Simple] in market appeal."  Pl.'s Mem., at 12.  Accepting all of these allegations as true and reading all inferences in the light most favorable to Simple, as summary judgment standards instruct, the Court concludes that while these allegations may not reveal ideal behavior on the part of Walgreens, they do not add up to intentional discrimination.  Put another way, the Court finds that the lack of an affirmative action plan, a break from an unofficial custom of posting upcoming openings, and an ambiguous statement by the decisionmaker "are too thin a thread on which to hang intentional racial discrimination."  *Bickerstaff v. Nordstrom*, *Inc.*, 48 F. Supp. 2d 790, 798 (N.D. Ill. 1999).

## 2.    Indirect Method of Proving Discrimination

Having failed to present direct evidence of racial discrimination, Simple must then attempt to proceed under the *McDonnell Douglas* burden-shifting analysis.  Under this analysis,

Simple must carry the initial burden of establishing a prima facie case of discrimination by showing:  1) he was a member of a protected class; 2) he was performing his job satisfactorily and was qualified for the position that he in fact sought; 3) he was rejected for the position; and 4) the defendant filled the position with someone not of the plaintiff's protected class. *McDonnell Douglas*, 411 U.S. at 802; *Blise v. Antaramian,* 409 F.3d 861, 866 (7th Cir. 2005); *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).  If the plaintiff makes out a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its promotion choice.  *Brill v. Lante Corp*., 119 F.3d 1266, 1270 (7th Cir. 1997).  If the defendant does this, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual.  *Id*.

Here, Walgreens does not dispute that Simple has made out a prima facie case under *McDonnell Douglas*.  Walgreens claims that it is entitled to summary judgment, however, because it has sufficiently articulated a legitimate, nondiscriminatory reason for selecting Jonland over Simple.  Walgreens admits that Palmer's decision was subjective, and states that Jonland had the skill set that, in Palmer's opinion, was the best fit for the needs of the Pontiac store.  Specifically, Walgreens cites Jonland's past productivity, her ability to keep to the task at hand, attention to detail, and proven strength in investment management, which is "the maintenance of optimum inventory levels for the sales base" of a particular store.  Palmer Aff., at ¶4.

In turn, Simple has argued that Walgreens' rationale for selecting Jonland is pretextual because of Simple's superior qualifications: Jonland did not have a college degree and Simple did; Jonland had once been disciplined for using profanity in the workplace[4] and Simple had

---

[4]  In various pleadings, Simple has argued that Jonland was an inferior candidate because she had used foul language in an incident with an Indian co-worker while Jonland was serving as an EXA.  In the depositions submitted as part

never been so disciplined; Jonland had a lower EXA evaluation than Simple did; and Jonland had never worked at the Pontiac store while Simple had previously worked there.  Simple also reincorporates the pieces of his alleged "mosaic" of circumstantial evidence: Walgreens had no affirmative action policy nor written guidelines for the selection of manager, Walgreens hired Jonland without posting a notice of the opening.

As recently as this year, the Supreme Court has reiterated that "qualifications evidence may suffice, at least in some circumstances, to show pretext."  *Ash v. Tyson Foods, Inc*., 126 S.Ct. 1195, 1197 (2006); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative to whether the employer's reasons are pretexts for discrimination.").  Precedent also clearly shows, however, that "comparative qualifications" arguments will establish pretext in only limited circumstances.  *See Mylnczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006).  The Seventh Circuit has stated:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.  Only this rule . . . [will] ensure that the role of the court [does] not degenerate into the inappropriate one of "super personnel department."

---

of the Summary Judgment record, Plaintiff's counsel asked various deponents about the incident, specifically, if they had heard that Jonland called this Indian co-worker a "foreign bitch."  See, e.g., Palmer Dep., at 26–28; Jonland Dep., at 14–20; Turley Dep., at 16–19.  None of these deponents stated that Jonland had called this co-worker a "foreign bitch" but rather only testified that Jonland used the terms "fucking" and "bitch" and "shit" in dealing with the co-worker.  Simple has not cited any evidence that Jonland actually called a co-worker a "*foreign* bitch." Instead, in his pleadings, Simple has instead labeled the use of "fucking" and "shit" with this Indian co-worker as an incident as one of "racial insensitivity."  In his deposition, Palmer testified that he recalled only that "Ms. Jonland had used vulgar language towards another employee."  Palmer Dep., at 27.  Because Simple has failed to establish any evidence to support a conclusion that Jonland's behavior was motivated by race, that she used any racial epithet, or that she was disciplined for any "racially insensitive" behavior, the Court is not convinced that Simple has properly labeled this use of profanity as one of "racial insensitivity."

*Id*. (*citing Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81).

Here, when the qualifications of Simple and Jonland are closely compared, it becomes clear that there is not such disparity that "no reasonable person" could have made the promotional decision that Walgreens made in this case.  Simple held a four-year college degree.  Jonland attended college for three years.[5]  Also, while the extent to which Palmer relied on any EXA performance evaluations is unclear,[6] Simple's ratings were "Exceptional/Above Average" and "Can Promote to Store MGR Soon," and Jonland's ratings were "Exceptional/Above Average," and "Future Store Manager."  Simple had been an EXA longer than Jonland, but Jonland had been with the company longer than Simple.  Simple had done work in the Pontiac store while Jonland had not, but that work apparently amounted to only "a couple of days" of filling in there.  Simple Dep., at 82.  Even in light of the fact that Jonland had been reprimanded for an incident of using profanity at work, and Simple had not, the competing qualifications evidence in this case does not sufficiently suggest that Walgreen's proferred explanation for selecting Jonland was a pretext—that is "a lie, rather than an oddity or error"—such that there is an issue of triable fact appropriate for jury resolution.  *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

Simple also seems to suggest that Walgreens' lack of formal policy or departure from possible unofficial policy regarding promotions is evidence of pretext.  Walgreens has never disputed that the district manager—in this case, Michael Palmer—has discretion over the selection of store managers within his district.  Title VII does not ban the use of subjective

---

[5] Palmer testified, and Simple does not dispute, that a college degree is not a factor in the decision to promote an EXA to store manager.

[6]  In his deposition, Palmer stated that he would use a report containing a summary of these performance evaluations "as one of the tools that [he]would review before [he] would pick consider the replacement for the manager that's leaving."  Pamer Dep., at 62.  Later in his deposition, Palmer denies that he even referred to the document in selecting Jonland for the Pontiac store in 2003.  *Id*. at 64.

decisionmaking.  *Millbrook*, 280 F.3d at 1176.  "In fact, 'subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service oriented economy.'"  *Id*. (*quoting Denney v. City of Albany*, 247 F.3d 1172, 1185–86 (11th Cir. 2001)).

While Simple has made out a prima facie case of racial discrimination under the *McDonnell Douglas* indirect method, the Court finds that Walgreens has articulated a legitimate, non-discriminatory reason for promoting Jonland rather than Simple, namely, that she was the candidate with the skill set best suited to meet the needs of the Pontiac store.  The Court further finds that Simple has failed to meet his burden of establishing a dispute of material fact as to whether Walgreens' reason was a pretextual cover-up for intentional discrimination. Accordingly, Simple cannot proceed under the indirect method of proving discrimination.

### 3.    Conclusion

Simple has failed to present a triable issue of fact and is unable to proceed under either the direct or indirect method of establishing discrimination under Title VII.  Accordingly, Walgreens' Motion for Summary Judgment on the issue of liability is GRANTED.

### C.    Damages of Back Pay and Front Pay

Walgreens has also moved for summary judgment on the damage issues of whether Simple would be entitled to front pay and back pay.  Because the Court has granted summary judgment in favor of Walgreens on the issue of liability, the issue of recoverable damages is MOOT.

### CONCLUSION

For the above reasons, Simple's Motion to Strike the Affidavit of Michael Palmer [#49] is DENIED.  Walgreens' Motion to Strike Plaintiff's Response to Allegedly Undisputed Material

Facts [#54] is DENIED.  Walgreens' Motion for Summary Judgment [#48] is GRANTED.  This

matter is now TERMINATED.

ENTERED this 24th day of October, 2006.


s/ Michael M. Mihm__
   Michael M. Mihm
   United States District Judge