E-FILED
Tuesday, January, 2008 11:42:24 AM
Clerk, U.S. District Court, ILCD

CERTIFIED COPY

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

### JUDGMENT - WITH ORAL ARGUMENT

**Date: December 26, 2007**

**BEFORE:**     Honorable RICHARD A. POSNER, Circuit Judge

Honorable DIANE P. WOOD, Circuit Judge

Honorable ANN CLAIRE WILLIAMS, Circuit Judge

No. 06-3990

ERIC D. SIMPLE,
          Plaintiff - Appellant

  v.

WALGREEN COMPANY, an Illinois Corporation,
          Defendant - Appellee

Appeal from the United States District Court for the
Central District of Illinois
No. 04 C 1305, Michael M. Mihm, Judge

The judgment of the District Court is REVERSED, with costs, and the
case is REMANDED in accordance with the decision of this court entered
on this date.

(1061-110393)



FILED

JAN 18 2008

PAMELA E. ROBINSON, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CERTIFIED COPY

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3990

ERIC D. SIMPLE,

Plaintiff-Appellant,

v.

WALGREEN COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-1305—**Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 14, 2007—DECIDED DECEMBER 26, 2007

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The district court granted summary judgment in favor of the defendant in this suit for racial discrimination in employment in violation of Title VII and 42 U.S.C. § 1981, and the plaintiff appeals. He had been hired by Walgreen in 1995, initially as a management trainee. Four years later he was promoted to assistant store manager and two years after that he was offered the job of manager of a Walgreens store in Kankakee, Illinois. He declined the offer because the store was in a "socioeconomically challenged" area with a high "shrink," which means a gap between expected and actual profits

that is due to shoplifting. The offer was made by Michael Palmer, the district manager for the region in Northern Illinois that includes Kankakee. The following year Palmer offered the plaintiff a store manager job in Normal, but the plaintiff rejected that offer too. Walgreen's demographic tracking records show that the average annual income of the customers of both the Kankakee store and another store, in Peoria, that the plaintiff was also offered and declined is "low" (defined as less than $40,000) and that more than 40 percent of the customers are black. Although the store in Normal that the plaintiff was also offered had a more affluent customer base and 80 percent of its customers were white, the defendant makes nothing of the demographic differences between that store and the ones in Kankakee and Peoria.

A few years later, Palmer, though aware of the plaintiff's wanting to manage a store in Palmer's district (which contains 28 Walgreen stores), hired a white woman, Melissa Jonlánd, as manager of a store in Pontiac, Illinois, without notifying the plaintiff of the opening. The customers of this store have an average income of $40,000 to $60,000 and more than 80 percent of them are white. It is a more desirable store to manage than the Kankakee and Peoria stores that had been offered to the plaintiff—it is more profitable (in part because of less shrinkage), and store managers' bonuses are based on their stores' profits. It may seem odd that a store would be less profitable just by virtue of being in a poorer neighborhood, even if that means greater losses from shoplifting; there might well be offsetting cost savings, such as in rent or wages. But Walgreen has not made an issue of relative profitability.

By the time Jonland was appointed to manage the Pontiac store, the plaintiff had been an assistant store

No. 06-3990                                        3

manager for four years and Jonland for only two. (Only assistant store managers are eligible for promotion to store manager.) The company considered both to be highly qualified for appointment as store managers. Only the difference in experience—which favored the plaintiff—seems to have distinguished them. Jonland had not expressed interest in the Pontiac store, and Palmer had not offered her a store manager's job at one of the predominantly black/low-income stores.

Shortly after Jonland's appointment, Leanne Turley, the manager of the store of which the plaintiff was assistant manager, had a conversation with him in which, she testified in her deposition, "I may have stated that Pontiac was possibly not ready to have a black manager. It is well known in this area that some of the smaller, outlying towns have some very racist tendencies, and I was simply trying to make [the plaintiff] feel better because my feeling was he may not have been very happy working there." Turley had previously been the manager of a store of which Jonland had been assistant manager; and in an answer to an interrogatory propounded by the plaintiff, Palmer stated that his assessment of Jonland's performance, in deciding to promote her to store manager, had been "supported by" Turley.

The plaintiff's lawyer does not help his cause by arguing that Walgreen's tracking of the racial composition of its customers shows discriminatory intent, that Jonland but not the plaintiff was once reprimanded for speaking in a vulgar manner to a coworker, that Palmer's admission that he consulted Turley about the appointment of Jonland constitutes evidence that his decision was influenced by racism on Turley's part, and that the plaintiff has made out a prima facie case both by direct evidence of discrimi-

4                                        No. 06-3990

nation and by the indirect method of the *McDonnell Douglas* case. Retailers are naturally very interested in the racial makeup of their customer population because people of different races often have different tastes and sensitivities; Jonland's episode of vulgarity could hardly be thought a career impediment; all that Palmer admitted was that he was influenced by Turley's assessment of Jonland's performance when Turley had been Jonland's boss; and when a plaintiff in a discrimination case has direct evidence of discrimination as well as the indirect evidence required to make out a prima facie case under *McDonnell Douglas* he does not have to show that either approach, taken in isolation from the other, makes out a prima facie case—he can combine them. "Any demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) (per curiam); see also *Leffel v. Valley Financial Services*, 113 F.3d 787, 793 (7th Cir. 1997). "Despite the minutiae of the various proof schemes set forth in *McDonnell Douglas* . . . the straightforward question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that she was the victim of . . . discrimination on the part of the employer." *Burns v. Aaf-McQuay, Inc.*, 96 F.3d 728, 732-33 (4th Cir. 1996).

*McDonnell Douglas* creates an "exploding" presumption. It puts pressure on the defendant to explain his motive for the employment action of which the plaintiff complains. Once the explanation is given, the presumption falls away and the judge has to decide whether there is enough evidence of unlawful conduct to entitle the plaintiff to a trial. There is some question about the literal

No. 06-3990                                                    5

applicability of the *McDonnell Douglas* test in this case because it is uncertain (though likely) that Palmer knew that the plaintiff would have liked to be considered for the Pontiac store. No matter; the defendant was unable to give a coherent reason for appointing Jonland rather than the plaintiff. Palmer gave inconsistent explanations, on one occasion saying that Jonland "outshines you [the plaintiff] in market appeal" and on another that she would be better at improving "employee morale." The inconsistency is suggestive of pretext and thus is evidence of discrimination, and it does not stand alone, but instead reinforces the other evidence of a racial motive. A finding of pretext can complete the prima facie case under *McDonnell Douglas*, but it can also be independent evidence of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Forrester v. Rouland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

Despite the weaknesses of some of the arguments made by the plaintiff's lawyer, it is apparent that the district judge should not have granted summary judgment. A reasonable jury, if the evidence gathered in the summary judgment proceedings were the evidence at a trial, could find that the plaintiff was denied the promotion to manage the store in Pontiac because he is black. The evidence suggests that Palmer wanted to steer his highly regarded black assistant manager to a store in a predominantly black, low-income neighborhood; when the plaintiff balked, Palmer suggested that he might prefer to move to a big city, where there are more Walgreens stores.

There is no evidence that Jonland was more qualified to manage the store in Pontiac than the plaintiff, who had twice her experience as an assistant manager, the mandatory stepping stone to store manager. But she is white, and

the store is in a predominantly white neighborhood, while the plaintiff is black and so was twice offered a "black" store—and when the store manager's job at the "white" store fell vacant he was ignored. The significance of Turley's remark about racism in Pontiac lies in the fact that as an experienced Walgreens store manager (it appears that she had been one for at least four years) she was undoubtedly aware of what Palmer was looking for in a store manager in Pontiac, and one interpretation of the remark is that the plaintiff's race would bar him from consideration by Palmer. Cf. *Collins v. Kibort*, 143 F.3d 331, 335-36 (7th Cir. 1998); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1530-31 (7th Cir. 1990). The plaintiff would not feel "happy" among Pontiac's white racists, which is a standard euphemism for refusing a job to someone of a different race from the people he would be associating with. Cf. *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1028-29 (5th Cir. 1981). Racial segregation is obviously a form of racial discrimination. *Collins v. Kibort, supra*, 143 F.3d at 335-36.

Turley's statement was an admission by Walgreen because it was a statement about a matter within the scope of her employment, Fed. R. Evid. 801(d)(2)(D)—remember that she had been consulted by Palmer about the appointment of a manager for the Pontiac store. And this means that the plaintiff's deposition testimony that Turley had also told him that "race played a factor" in the decision to appoint Jonland to manage the Pontiac store was another admission that race had played a role in Palmer's decision to appoint Jonland rather than the plaintiff. "[A] subordinate's [in this case, the plaintiff's] account of an explanation of the supervisor's [Turley's] understanding regarding the criteria utilized by manage-

No. 06-3990

ment in making decisions on hiring, firing, compensation, and the like is admissible against the employer, regardless of whether the declarant has any involvement in the challenged employment action." *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 298 (3d Cir. 2007); see also *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1053 (7th Cir. 1990); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1090-94 (1st Cir. 1995); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1215-16 (3d Cir. 1995).

We acknowledge that in apparent contradiction to the passage from *Marra* and to the other decisions that we have just cited (including our own *Williams v. Pharmacia, Inc.*), some of our decisions say that "the declarant must [for his evidence to be treated as an admission of his employer] be involved in the decisionmaking process affecting the employment action." E.g., *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 630 (7th Cir. 2006); *Young v. James Green Management, Inc.*, 327 F.3d 616, 622 n. 2 (7th Cir. 2003). But the contradiction dissolves when we note the difference between "employment action" and "decisionmaking process affecting the employment action." Turley was not involved in the employment action—appointing Jonland to be the Pontiac store manager. But unlike the witnesses in *Keri* and *Young*, she was involved in the process that led up to that action, by being consulted about the appointment. That was enough to make her statement—which was confirmed, moreover, by an internal investigation by Walgreen—an admission by her employer. *See Aliotta v. National Railroad Passenger Corp.*, 315 F.3d 756, 761-62 (7th Cir. 2003); *Marra v. Philadelphia Housing Authority, supra*, 497 F.3d at 298-99.

8                                    No. 06-3990

The trial may cast the facts in a different light; we do
not mean to prejudge the outcome. But there is enough
evidence of discrimination to entitle the plaintiff to a trial.

REVERSED AND REMANDED.

A true Copy:                    s/ Clerk

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—12-26-07

# United States Court of Appeals

## For the Seventh Circuit

### Chicago, Illinois 60604
<u>NOTICE OF ISSUANCE OF MANDATE</u>

DATE:    January 17, 2008

TO:    Pamela E. Robinson
       United States District Court
       Central District of Illinois
       Room 309
       100 N.E. Monroe Street
       Peoria, IL 61602
       USA


FROM:    Clerk of the Court

RE:    06-3990
       Simple, Eric D. v. Walgreen Company
       04 C 1305, Michael M. Mihm, Judge

       Herewith is the mandate of this court in this appeal, along
       with the Bill of Costs, if any.  A certified copy of the
       opinion/order of the court and judgment, if any, and any
       direction as to costs shall constitute the mandate.

       [ ] No record filed
       [X] Original record on appeal consisting of:

**ENCLOSED:**                           **TO BE RETURNED AT LATER DATE:**
       [1]     Volumes of pleadings              [ ]
       [ ]     Volumes of loose pleadings        [ ]
       [ ]     Volumes of transcripts            [ ]
       [ ]     Volumes of exhibits               [ ]
       [ ]     Volumes of depositions            [ ]
       [ ]     In Camera material                [ ]
       [ ]     Other_____    [ ]

               Record being retained for use
               in Appeal No. _____    [ ]

       Copies of this notice sent to:        Counsel of record
       [ ]     United States Marshal
       [ ]     United States Probation Office
**NOTE TO COUNSEL:**
       If any physical and large documentary exhibits have been filed in
       the above-entitled cause, they are to be withdrawn ten days from the
       date of this notice.  Exhibits not withdrawn during this period will
       be disposed of.

       Please acknowledge receipt of these documents on the enclosed copy
       of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
       Received above mandate and record, if any, from the Clerk, U.S.
       Court of Appeals for the Seventh Circuit.

Date: _____    _____

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

### BILL OF COSTS

**Date: January 17, 2008**

CERTIFIED COPY

Taxed in favor of:   Appellant - Eric D. Simple

Appeal No. 06-3990

ERIC D. SIMPLE,
            Plaintiff - Appellant
    v.

WALGREEN COMPANY, an Illinois Corporation,
            Defendant - Appellee

/s/ Clerk

Clerk of the United States
Court of Appeals for the
Seventh Circuit

Appellate Court No.: 06-3990          Docketed on: 11/8/06
Short Caption:      Simple, Eric D. v. Walgreen Company
District Court Judge: Michael M. Mihm
District Court No.:  04 C 1305

|     |                                                                      | Cost Of<br>Each Item |           |
| --- | -------------------------------------------------------------------- | -------------------- | --------- |
| 1.  | For docketing a case on appeal or review or docketing any other proceeding _____ | _____ | _____ |
| 2.  | For reproduction of any record or paper, per page _____ | _____ | _____ |
| 3.  | Reproduction of briefs:                                              | $  216.59            |           |
|     |                                                                      | Total                | $  216.59 |

(1077-081992)